Argued January 19; reversed March 23; rehearing denied
April 20, 1943

# STONE LOGGING & CONTRACTING CO. *v.* INTERNATIONAL WOODWORKERS OF AMERICA, COLUMBIA DISTRICT COUNCIL

## NO. 5, ET AL.

(135 P. (2d) 759)

14

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*Hy Samuels,* of Portland (Harry M. Kenin, of Portland, on the brief), for appellants.

*Gunther F. Krause,* of Portland (George P. Winslow, of Tillamook, on the brief), for respondent.

This is a suit to enjoin picketing, brought by the plaintiff, Stone Logging and Contracting Company, against the defendants, who are individual members of or local unions affiliated with the Congress of Industrial Organizations. The plaintiff is engaged in interstate commerce.

On April 1, 1940, the plaintiff entered into a written contract with Lumber and Sawmill Workers Union, Local 2609 (American Federation of Labor) and on January 9, 1941, a supplemental agreement was executed between the contracting parties. Among other provisions the contract of April 1, 1940, contained the following:

> "During the life of this Agreement the Union shall be the sole collective bargaining agency for all of the employees of the Company with the exception of office workers and those in a supervisory capacity, and the employer does recognize said Union as such bargaining agency."

Other provisions related to adjustment of grievances through a shop committee, the renunciation of strikes or lockouts "until all means of adjustment herein above mentioned have been exhausted," hours, seniority and working conditions in general. The supplement executed on January 9, 1941, constituted a clear-cut union shop contract. No question concerning its construction as such has been raised.

The complaint alleges that at the time of the execution of the contract of April 1, 1940, and ever since said date, the A. F. of L. union represented a majority of the employees of the plaintiff and was the bargaining agency selected by a majority for the purpose of collective bargaining. It is further alleged that said union has represented all of the plaintiff's employees in negotiation of the contract of April 1, 1940, and in fixing wages, hours and working conditions and that the union shop contract of January 9, 1941, has been in full force and effect "between plaintiff and plaintiff's employees as represented by said local," that the same has at all times been binding upon plaintiff and all of the plaintiff's employees. It is further alleged that the plaintiff has fully complied with the contract and that there is no labor dispute between the plaintiff and the plaintiff's employees relating to wages, hours and working conditions or the agency for collective bargaining. It is alleged further that the named defendants on January 13, 1941 (a few days after the execution of the union shop agreement), picketed plaintiff's operation pursuant to a conspiracy to force the plaintiff to discontinue its business or violate the union shop agreement and the Wagner Act. Plaintiff alleges in substance that under the circumstances alleged it was required to bargain collectively with the A. F. of L. and was prohibited by the Wagner Act from bargaining with the defendant C. I. O. union and that it would be "subjected to proceedings under the National Labor Relations Act because of unfair labor practices" if it breached its contract with the A. F. of L. union. Plaintiff's conclusion is that the picketing, which was for the purpose of inducing a breach of the contract, did not grow out of a "labor dispute" within the meaning of the

Oregon anti-injunction act, O. C. L. A. 102-913 et seq., and therefore should be enjoined. It is alleged that immediately preceding the picketing the defendants demanded of plaintiff not only that it abandon the contract with the A. F. of L. union but also that it recognize the defendant union for all of its employees. Irreparable damage was alleged and also proven.

The foregoing allegations were denied by the defendants except as affirmatively alleged. In their answer the defendants affirmatively alleged that on or about the 8th day of January, 1941 (the day before the execution of the union shop contract),

"* * * an open meeting was held of all the employees of the plaintiff for the purpose of discussing fully and frankly hours, wages and working conditions in connection with the plaintiff's operations. At said open meeting, the defendants requested that a committee of Local 2609 be appointed to cooperate with the committee, appointed by the defendants herein to discuss hours, working conditions and wages with the plaintiff. That Local 2609 refused to cooperate with the defendants herein to discuss jointly with these defendants, hours, working conditions and wages, with the plaintiff."

The answer also alleges that on or about the 14th day of January, 1941, (about four days after the execution of the union shop contract and one day after the commencement of the picketing) committees of the rival unions met, and the defendants proposed

"* * * that a joint committee made up of these defendants and Local 2609 negotiate with the plaintiff in connection with working conditions, hours and wages, that upon reaching an agreement, all return to work and that the matter be then referred to the National Labor Relations Board

for the purpose of calling an election to determine as provided for by law the bargaining agent for the plaintiff's operations. That the representatives of Local 2609 refused, and still refuse to enter into such an agreement.''

It will be observed that the answer as thus far analysed complains merely of two instances of alleged refusal to cooperate by the A. F. of L. union. There is not a word of complaint against the plaintiff employer for any act, refusal to act or attitude on its part. The allegations concerning the plaintiff employer are the following: First, that for several years, prior to January 13, 1941, the plaintiff paid his employees a smaller amount of wage than was paid by other persons similarly situated and that on or about the 10th day of January, 1941 (the day after the execution of the union shop contract),

''* * * these defendants appointed a committee to discuss hours, working conditions and wages with the plaintiff, but the plaintiff refused to negotiate or discuss hours, working conditions and wages with the committee appointed by these defendants. That at said time, the defendants represented a majority of the employees of the plaintiff.''

Defendants allege that they represented a majority of employees of the plaintiff at the times in question. These are the only charges against the plaintiff.

Defendants alleged further that after plaintiff's aforesaid refusal they peacefully picketed the operation and that they have at all times been ready, willing and able to negotiate with the plaintiff and with the A. F. of L. union and to refer the matter to the National Labor Relations Board for the purpose of determining the bargaining agent for plaintiff's operation.

BRAND, J. The problem presented by the pleadings and evidence may be stated as follows: Each of two rival unions claims to be the representative designated by a majority of plaintiff's employees for the purpose of collective bargaining. Consequently, each of them claims the right to act as sole collective bargaining agency for all of the employees of the company. The A. F. of L. union, which had in the past acted as bargaining agency, contracted with the employer that it should be the sole collective bargaining agency for all of the employees. The employee members of the C. I. O. did not by any act authorize the A. F. of L. union to bargain for them. Purporting to act as exclusive bargaining agency, the A. F. of L. union executed with the employer a union shop contract. Immediately thereafter the C. I. O. union demanded of the employer that it be recognized as bargaining agency for all of the employees and that the employer bargain with it concerning wages and the like. The employer in conformity with the provisions of the union shop contract declined to bargain with the C. I. O. union, whereupon that union picketed the employer's operation. Upon suit by the employer an injunction was issued by the trial court, and the defendant C. I. O. union appeals.

The purpose of the picketing was established by ample evidence and confirmed by the testimony of the defendant, Albert F. Hartung, president of Columbia River District Council (C. I. O.) "representing the local unions that come under our jurisdiction." He testified directly that the defendants demanded that the plaintiff should bargain with the defendant "for the entire employees of the camp." There is evidence that the union shop contract which was demanded by

the A. F. of L. union was opposed by the plaintiff company but was finally executed by it because of the insistence of the bargaining agency.

Plaintiff was engaged in interstate commerce, and a sufficient showing of irreparable damage was made.

If it appears under the law and the evidence that a "labor dispute" existed within the meaning of O. C. L. A. 102-913 et seq. then the court is without authority to issue an injunction, for the findings of fact which are a prerequisite to the issuance of an injunction when a "labor dispute" is involved have not been made. We direct our attention to the existence vel non of a labor dispute.

We have this day decided the case of *Markham & Callow, Inc., v. International Woodworkers of America,* 170 Or. 517, 135 P. (2d) 727 wherein we said:

> "Where an employer, innocent of any unfair labor practice, enters into a union shop contract with an 'open union' which has been chosen and continues to be supported by a majority of its employees and which is the authorized agent of all employees for collective bargaining, having been duly certified as such by the National Labor Relations Board after an election held pursuant to the statute, and when under such conditions the employee members of a rival minority union picket the employer's business for the sole purpose of causing the employer to violate the contract by re-employing discharged minority employees who might have joined but refused to join the majority union, and who were discharged pursuant to the contract because of such refusal, we hold that the pre-existing 'labor dispute', if any, has ceased to exist and that under such conditions the picketing is for an unlawful purpose, and the Oregon anti-injunction act is not applicable."

It will be observed that the case at bar closely resembles the Markham & Callow case, subject to a few important distinctions. The chief distinction lies in the fact that in the Markham & Callow case the union acting as exclusive bargaining agency for all of the employees and which as such secured the union shop contract had been certified as the exclusive representative of all of the employees for the purposes of collective bargaining by the National Labor Relations Board pursuant to an election conducted by that board. In the case at bar, on the other hand, the plaintiff comes before the court without the benefit of any certification. The immediate and exciting cause of the picketing differs somewhat in the two cases. In the Markham & Callow case the plaintiff had performed under the union shop contract and had dismissed the dissenting employees. In the case at bar the plaintiff was, by the terms of the contract, obligated to discharge dissenting employees upon demand but had not yet been required to do so. The challenge of the C. I. O. union to the union shop contract of the A. F. of L. in the case at bar is found in their demand that the employer bargain collectively with the C. I. O. union for all of the employees contrary to the provisions of the contract, whereas in the Markham & Callow case the challenge to the contract was in the form of a demand that the discharged employees be reinstated contrary to the provisions of the contract. In essence the two controversies were the same, except for the absence of an election and certification in the case at bar.

The plaintiff supports its contention that there was no labor dispute by the following course of reasoning: It asserts, first, that the A. F. of L. union did in fact represent a majority of employees; second, the

A. F. of L. union and the plaintiff had agreed that the union should be the sole and exclusive bargaining agency for all of the plaintiff's employees; and, third, that the union shop contract executed by the A. F. of L. union was binding upon all of the employees whether members of the bargaining union or not. Under these conditions the plaintiff contends that the picketing was for an unlawful purpose and that no labor dispute exists.

Excluding for the moment all consideration of the National Labor Relations Act, and considering only the law of this state, we know of no statute or rule of the common law which authorizes the representative of a majority of employees to make a contract with the employer which will bind the non-consenting minority. If the representative of the majority in the case at bar is to be declared to be the exclusive representative of all of the employees for the purpose of collective bargaining it must be by force of the federal statute. Again, if we exclude from our consideration the provisions of the National Labor Relations Act it might well be argued that where an employer and a union have executed a collective bargaining agreement such an agreement would be lawful, and picketing for the purpose of inducing a breach thereof by employees who were not represented by the bargaining agency might be deemed to be for an unlawful labor objective and consequently enjoinable. It has at least been held that if employees who were members of the bargaining agency union should picket for the purpose of causing a breach of the collective bargaining agreement by which they were themselves bound such conduct would be for an unlawful labor objective and therefore subject to injunction notwithstanding the provisions of an anti-injunction act. *Uneeda Credit Clothing Stores*

*v. Briskin*, August 16, 1939, 14 N. Y. S. (2d) 964; *J. I. Haas Co. v. McNamara*, June 7, 1940, 21 N. Y. S. (2d) 441, and see Teller, Labor Disputes and Collective Bargaining, § 163. It is unnecessary for us to decide whether, irrespective of the National Labor Relations Act, a "labor dispute" exists when the bargaining agency which in fact represents only a part of the employees enters into a collective bargaining agreement which purports to bind all the employees, including some not represented by the bargaining agency and when, under those conditions, the unrepresented minority pickets the employer's operation for the purpose of inducing a breach of the purported terms of the contract. The decision of this question is unnecessary because of the fact that the employer is engaged in interstate commerce, and the case is controlled by the National Labor Relations Act, relevant portions of which are as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." 29 U. S. C. A. § 157.

Section 158 provides:

"It shall be an unfair labor practice for an employer--- * * *

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in sections 151-166 of this title or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained,

or assisted by any action defined in sections 151-166 of this title as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective bargaining unit covered by such agreement when made.''

''(5) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title.'' 29 U. S. C. A. § 158.

Section 159 provides:

''(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment; *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

''(b) The board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of sections 151-166 of this title, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

''(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under

section 160 of this title or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertin [ascertain] such representatives.'' 29 U. S. C. A. § 159.

■ It is only by reason of the provisions of section 159 (a) that representatives selected by a majority of employees can become the exclusive representatives of all the employees in an appropriate unit for collective bargaining, and only under the conditions prescribed in that section can the representatives of the majority by contract bind the dissenting minority employees. See *Busch Jewelry Co. v. United Retail Employees' Union,* 170 Misc. 482, 10 N. Y. S. (2d) 519, March 13, 1939, for the analogous rule under state statute. Any discharge of employees contrary to the provisions of the federal act would constitute an unfair labor practice. Again, it is clear from the provisions of the act, 29 U. S. C. A. §§ 158 and 159, quoted supra, that it would constitute an unfair labor practice for an employer to discourage membership in a labor organization unless its action is rendered immune to the condemnation of the statute by bringing it within the provisions of section 158 (3). In other words, if, but only if, a labor organization was not assisted by any unfair labor practice of the employer (such as the giving of aid to the union in the matter of securing members or the like, *International Association of Machinists, Tool and Die Makers v. National Labor Relations Board,* 110 F. (2d) 29, November 20, 1939) and if such labor organization is the representative designated or selected for the purposes of collective bargaining by the majority of employees in a unit appropriate for such purposes (section 159) they may make a contract for a union shop, and since they

may make it they may also enforce it by discharging employees who refuse to join the bargaining agency.

It is true that the A. F. of L. union had not, on January 13th, yet compelled the plaintiff to discharge the C. I. O. members pursuant to the provisions of the union shop contract of January 9th, but the execution of that contract constituted a continuing threat that its provisions would be enforced and that members who refused to join the A. F. of L. union would be discharged. The mere execution and existence of such a contract constitutes an encouragement to join the A. F. of L. and a discouragement to membership in the C. I. O.

The discouragement of membership in a labor organization (except as expressly authorized) is not the only conduct condemned as an unfair labor practice. The negotiation of collective bargaining agreements with a company dominated union or a union which at the time of the agreement represented only a minority of the employees has been held to constitute an unfair labor practice. Teller on Labor Disputes and Collective Bargaining, sections 177 and 324; In re National Electric Products Corporation et al., 3 Decisions and Orders of National Labor Relations Board, 475.

"Under the National Labor Relations Act, employers have the duty to bargain collectively only with the chosen representatives of their employees and the implied duty not to bargain with any one else on their behalf. National Labor Relations Act, 29 U. S. C. A. §§ 151-166." *Donnelly Garment Co. v. International Ladies' Garment Workers' Union,* 99 F. (2d) 309, October 28, 1938.

To the same effect see *Texarkana Bus Co. v. National Labor Relations Board,* 119 F. (2d) 480, April

30, 1941, and *R. H. White Co. v. Murphy,* 310 Mass. 510, 38 N. E. (2d) 685, January 2, 1942.

█ Plaintiff's contention is predicated on the theory that picketing in an attempt to cause the breach of a lawful contract constitutes an unlawful labor objective and should therefore be enjoined, but we cannot say that the picketing constitutes an attempt to cause the breach of a lawful contract unless we first find that the contract is one which, under the federal statute, the law will recognize and respect. We think that the employer would be guilty of an unfair labor practice in standing upon the performance of a union shop contract which purports to bind all the employees unless that contract was authorized by the provisions of section 158, U. S. C. A. We are also of the opinion that employees who picket for the purpose of causing the employer to desist from an unfair labor practice are engaged in a labor dispute within the meaning of O. C. L. A. 102-913 et seq.

█ To summarize, referring to section 159 (a) of the National Labor Relations Act, we observe, first, that the A. F. of L. union in making such a contract must be the exclusive representative of all the employees. The proviso of section 158 does not authorize the union shop contract if the bargaining agency is the representative of only a majority of the employees, but it must be the representative *"of the employees* as provided in section 159 (a)."* Reference to the latter section indicates that the bargaining agency must be (1) the exclusive representative of all the employees, (2) the representative of all the employees in a *unit appropriate for collective bargaining,* (3) designated or selected by the majority of employees in such unit, and, reverting to section 158 (3), it appears that before the

employer can enter into a union shop contract without being guilty of an unfair labor practice, the bargaining agency must represent a labor organization not established, maintained or assisted by any unfair labor practice of the employer. *International Association of Machinists, Tool and Die Makers v. National Labor Relations Board* (supra).

■ The burden of proving an enforceable closed shop agreement when a charge of ''unfair labor practice'' is asserted is upon the employer. *National Labor Relations Board v. Mason Mfg. Co.*, 126 F. (2d) 810, February 13, 1942.

■ The question then arises whether this court is authorized to determine the questions which must be determined under the federal statute before we can say that a ''labor dispute'' does or does not exist. Clearly, it is the task of an administrative body to determine whether or not the employer has been guilty of an unfair labor practice by aiding the union to secure the required majority for representation, yet the absence of such aid is a condition precedent to the right of the employer to enter into a union shop contract. Again, it is impossible to determine which of two competing unions represents fifty-one per cent or more of all the employees in an appropriate unit until that unit has been identified and designated. Under the provisions of section 159 (b) of the National Labor Relations Act, the unit appropriate for collective bargaining may be the employer unit, craft unit, plant unit or subdivisions thereof. The determination of this question is obviously an administrative and not a judicial function. There may be cases in which there is no actual controversy as to the appropriate unit. For instance, in the case at bar the appropriateness

of the unit has not been discussed, but the question is always implicit whenever one union claims a majority of the employees, and even in the case at bar the existence or non-existence of a majority in the A. F. of L. union may depend upon what unit the plaintiff and the union by their contract have carved out as appropriate for collective bargaining, namely, "all of the company employees in its logging operations in Tillamook County, Oregon, exclusive of office employees, foremen, Company stockholders." If a different unit had been selected as representing one hundred per cent, a different collective bargaining agency might conceivably have been selected by fifty-one per cent.

Aside from the above considerations, there is no inherent reason why the court cannot take evidence to determine as a question of fact which of two competing unions has been selected by a majority as bargaining agency, but the federal statute contemplates that such an issue may be settled by secret ballot of the employees. The courts are not empowered to direct or superintend an election, and it is apparent that the determination of the majority within an appropriate unit is more suitably vested in an administrative tribunal. Although the National Labor Relations Board may, instead of conducting the election by secret ballot, utilize any other suitable method to ascertain the representatives designated or selected as bargaining agency, it is obvious that the secret ballot is more likely to reflect the uncoerced will of a true majority than other methods, such as were employed in the trial of this case. Under the tug of conflicting forces, employees are frequently subjected to pressure first by one side then by the other, with the result that some of them sign cards designating

both competing unions. In the case at bar some employees twice shifted their designation of union affiliation within a few days. In view of these considerations it appears that a court on familiar principles of equity should in many instances at least withhold injunctive relief because the determination of the facts upon which the granting of an injunction depends would involve the exercise, if not the usurpation, of administrative functions by a judicial tribunal.

It appears that these are in part the considerations which have moved the courts to hold that they cannot in a suit to enjoin picketing determine what is the appropriate and lawfully selected bargaining unit for employees and to hold further that the National Labor Relations Board has exclusive initial jurisdiction to pass upon that question.

"The Board has exclusive jurisdiction (with respect to which jurisdiction the courts are powerless to interfere) to determine whether unfair labor practices have been committed, or to decide such questions as the appropriate bargaining unit or the agency which possesses a majority of authorizations to bargain collectively on behalf of employees. Judicial jurisdiction must await the determination in the first instance by the Board." 2 Teller, Labor Disputes and Collective Bargaining, § 271.

In the case of *Fur Workers Union v. Fur Workers Union,* 105 F. (2d) 1, decided March 27, 1939 (exhaustively reviewed in the Markham & Callow case) the question was whether or not a labor dispute existed. Two rival unions each sought recognition as sole representative for collective bargaining. The lower federal court found as a fact that nine of the eleven fur worker employees of Zirkin's, the employer,

had organized an A. F. of L. union and that a contract had been executed between the employer and the union as "exclusive representative for collective bargaining of all of the fur workers then in Zirkin's actual employ." The rival C. I. O. union commenced picketing for the purpose of causing the employer to rescind its recognition of the A. F. of L. union. The trial court held that no labor dispute existed and enjoined the picketing. The Circuit Court of Appeals for the District of Columbia reversed the lower court, holding that a labor dispute existed. It expressed the view that a mere controversy between two rival unions as to which should be the sole bargaining agency constituted a labor dispute even though the employer was not a party to the controversy. (See *Green v. Obergfell,* 121 F. (2d) 46, 138 A. L. R. 258, decided March 17, 1941.) The court then considered the identical question presented in the case at bar. We quote:

> "But the appellees urge further, in support of the trial court's issuance of the injunction, that if it is to be said that a labor dispute existed at some stage of the instant controversy, that dispute terminated once the appellee union was chosen by a majority of Zirkin's employees as their collective bargaining agency." *Fur Workers Union v. Fur Workers Union* (supra) at p. 8.

After reviewing numerous decisions, the court said:

> "We have given attentive consideration to the position taken by the appellees, but we nevertheless reach the conclusion that it is not a supportable one. The essential predicate of the argument is that once a majority of the employees of a particular employer have, without coercion on his part, made their choice of a bargaining unit, any labor dispute which may be said to have been involved theretofore has ended; therefore the

restrictions of the Norris-LaGuardia Act upon the issuance of injunctions are inoperative. Applying this proposition to the instant case the appellees say that the trial court has found that a majority of the employees of Zirkin's have selected the appellee union as their collective bargaining agency; therefore the labor dispute has ended and injunction may issue in protection of the choice of the majority. But this argument rests upon the assumption that the Federal courts have power to determine the lawful selection of a bargaining agency by employees. If the trial court had no such power, then its findings of fact in respect of the selection of a bargaining agency by a majority of the employees of Zirkin's without employer coercion are without force, and it cannot be said that the Norris-LaGuardia Act restrictions upon the issuance of injunctions are inoperative. We think that the assumption that the trial court had power to make the determination in question is invalid and that the appellees' whole argument therefore falls.''

''On the contrary it seems clear that by the National Labor Relations Act Congress intended to confer exclusive initial jurisdiction upon the Board to determine the appropriate and lawfully selected bargaining unit for employees, and intended to give to the Board alone appropriate machinery, to wit, elections machinery, for making such determination.'' *Fur Workers Union v. Fur Workers Union* (supra) at pp. 11, 12.

The court held that a labor dispute existed and that ''only the National Labor Relations Board in the first instance can end that dispute by certification.''

 We do not cite the Fur Workers case as binding upon this court in construing the meaning of the words ''labor dispute'' as used in the Oregon anti-injunction act, O. C. L. A. 102-913 et seq. We recognize

that this state has power within constitutional limits to determine the meaning of that term as used in the state act. *Schwab v. Moving Picture Machine Operators,* 165 Or. 602, 109 P. (2d) 600, decided January 28, 1941; *Markham & Callow v. International Woodworkers of America* (supra), but the decisions of the federal courts concerning the construction of the National Labor Relations Act are binding upon this court in cases involving interstate commerce. Both federal and state decisions establish the rule that the National Labor Relations Act confers ''exclusive initial jurisdiction upon the board'' to determine the facts upon the existence of which depends the duty of the employer to bargain collectively with the union as representative of all the employees and the right of the union to bind all the employees to a union shop contract.

''The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.'' 29 U. S. C. A. § 160 (a).

*Union Premier Food Stores, Inc. v. Retail Food Clerks and Managers Union,* 98 F. (2d) 821, August, 1938; *Fur Workers Union v. Fur Workers Union* (supra); *International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers v. International Union of the United Brewery, Flour, Cereal and Soft Drink Workers of America,* 106 F. (2d) 871, September, 1939; *National Labor Relations Board v. Mason Mfg. Co.,* 126 F. (2d) 810, March, 1942; *Sharp & Dohme v. Storage Warehouse Employees Union,* 24 F. Supp. 701, August, 1938; *Allen-Bradley Local 1111*

*v. Wisconsin Employment Relations Board*, 295 N. W. 791, 237 Wis. 164, January, 1941; *Weyerhaeuser Timber Co. v. Everett Dist. Council*, 11 Wash. (2d) 503, 119 P. (2d) 643, December, 1941; *Amalgamated Association of Street Electric, Ry. and Motor Coach Employees of America, Division 1142 v. McDowell* (Texas) 150 SW (2d) 866, May, 1941.

As defined by our statute:

"The term 'labor dispute' includes any controversy concerning terms or conditions or employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." O. C. L. A. 102-925 (3).

The controversy in this case clearly involves a labor dispute under the express wording of the statute if the picketing is being employed for the purpose of inducing the plaintiff to desist from an unfair labor practice. If the plaintiff is to receive injunctive relief, proof must be made that the picketing does not involve or grow out of a labor dispute, i. e., is not being carried on to combat unfair labor practices of the plaintiff. Since that is an issue for the exclusive initial determination of an authorized administrative board (state or federal) it follows that plaintiff cannot in this suit and at this time prove the material allegations of its complaint and cannot therefore receive injunctive relief.

"Judicial jurisdiction must await the determination in the first instance by the board." Teller (supra) § 271.

Upon certification of one of the contesting unions the plaintiff's rights in this court would be materially enlarged. *Markham & Callow v. International Woodworkers of America.*

■ The plaintiff apparently seeks to bring this litigation within the ruling of the Markham & Callow case. In plaintiff's brief we find the following:

> "When an employer is living up to the terms of his contract with a labor union *designated by the National Labor Relations Board,* there can be no labor dispute between the employer and a minority of his employees." (Italics ours.)

(Citing cases to which we have referred and with which we agree.) But the facts in the instant case do not warrant the conclusion that the A. F. of L. union had been designated by the National Labor Relations Board. It is true that a complaint was filed with the board charging certain alleged unfair labor practices, one of which was the refusal to bargain with the C. I. O. union. The evidence discloses that a representative of the National Labor Relations Board made investigation and thereafter had a conversation with Charles F. Stone, manager of the plaintiff company. Witness Stone testified as follows:

> "Yes, when he called me in for an interview I asked him why—I said, 'I thought you were going to hold an election. Why don't you hold an election on this?' He repeated, 'You have no reason for an election; you have a bona fide contract'."

The charges were filed with the board in January, 1941, a few days after the commencement of the picketing. They were expressly "withdrawn without prejudice by the charging party" on or about March 29, 1941. Plaintiff's suit for injunction was filed May 1,

1941. It conclusively appears that no action was taken by the National Labor Relations Board which could rise to the dignity of a certification. The informal statement of a field representative of the board to the effect that the plaintiff had a bona fide contract does not constitute a decision or a certification within the meaning of 29 U. S. C. A. § 159.

It has been urged and with persuasive force that the law as here declared imposes great hardship upon an employer. *Fur Workers Union v. Fur Workers Union* (supra). Even before certification by the board an employer may be obligated to bargain collectively with a union which has been authorized for such purpose by a majority of the employees, and he acts at his peril in selecting the union with which to bargain. If he contracts with the union not entitled to represent the employees he will be found guilty of an unfair labor practice when the matter is later presented to the National Labor Relations Board, but even if he bargains with the union which is entitled to certification and executes a valid union shop contract he will still not be protected from peaceful picketing improperly carried on by the minority for the purpose of forcing the violation of the contract, because the court cannot pass upon the facts which establish that contract as valid under the provisions of the National Labor Relations Act. If that be hardship (and it is) it arises by force of statute, and injured parties must look to statute for relief. But the hardship is not as great as may at first appear. An employer is not always obligated to bargain collectively even with the representatives of a majority. In a statutory proceeding brought in the United States Circuit Court of Appeals by the National Labor Relations Board for the enforce-

ment of an order directing an employer to desist from certain unfair labor practices, the court said:

"An employer is of course entitled to proof that a union seeking to enter into collective bargaining represents a majority of his employees." *National Labor Relations Board v. Moltrup Steel Products Co.*, 121 F. (2d) 612, at 618, June 18, 1941.

In a similar case it was said:

"The contention that bargaining was not mandatory until the Board had accredited Local No. 307 as bargaining agent is frivolous. An employer is under a duty to bargain as soon as the union representative persents convincing evidence of majority support. National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F. 2d 862, 868, certiorari denied 304 U. S. 576, 585, 58 S. Ct. 1046, 82 L. Ed. 1540. We do not mean that respondent had to bargain with any one claiming to represent a majority, but adequate proof tendered by the claimant could not be ignored. The union offered to submit the signed membership cards, but this offer was not accepted. Respondent 'made no effort to learn the facts and took the chance of what they might be.' National Labor Relations Board v. Remington Rand, Inc., supra, 94 F. 2d at page 869." *National Labor Relations Board v. Dahlstrom Metallic Door Co.*, 112 F. (2d) 756, June 17, 1940.

In a similar proceeding in which the board had directed the employer to bargain with the certified union the employer contended that he had no means of knowing that the designated union represented a majority and therefore that he had been justified in insisting upon certification before bargaining. The court, by Learned Hand, J., said:

"That may well be an excuse when an employer is honestly in doubt and the union will not show its hand; but the Board found, as we have said, that

the respondent had more than once conceded the issue. Moreover, there could have been no doubt after the meeting at the Regional Office of the Board, and yet the respondent still held out. These facts justified the Board in finding that it was refusing to bargain * * *." *National ·Labor Relations Board v. Federbush Co.,* 121 F. (2d) 954 at 956, July 18, 1941.

 It is apparent from the foregoing authorities that the employer may demand reasonable proof of the facts which, if they exist, would impose upon him the duty of collective bargaining and that if such proof be withheld by the union his refusal to bargain will not be an unfair labor practice. This right to await proof before bargaining, though it affords no ground for relief from picketing pending certification, does nevertheless minimize the danger that an employer acting in good faith will be subjected to discipline by the Labor Relations Board pending certification. If reasonable proof is furnished by the purported bargaining agency, the employer can bargain accordingly. If none be furnished he need not. In the matter of judicial relief from picketing he may take some comfort from the following facts: The earlier rule which forbade the employer to invoke the jurisdiction of the board in a certification proceeding appears no longer to be in effect. We are referred by the defendants to a rule adopted by the National Labor Relations Board which provides that an *employer* may petition the board for an election and certification. Section 1, C. C. H. Labor Law Service, paragraphs 5631 and 5632; Code of Federal Regulations, 1939 Supplement, p. 2214, § 203.1. Thus the employer need no longer await action by a labor organization (which might refuse to act) in order to secure a certification

upon which to found a suit for injunction. We have held in the Markham & Callow case that upon certification of the bargaining agency by the board, any pre-existing labor dispute ends, and a state court may enjoin picketing if carried on for an unlawful labor objective, notwithstanding the provisions of the Oregon anti-injunction act. The fact that a valid enactment may impose an extreme hardship upon an employer confers no authority on the courts to disregard the legislative command. Being bound by the federal statute and being precluded from the exercise of purely administrative functions, we hold that a labor dispute exists and that in the absence of any authorized state administrative tribunal only the National Labor Relations Board in the first instance can end that dispute by certification.

The war of aggression waged by our enemies not only imperils our national existence but threatens also the destruction of all the hard won rights and privileges of labor. In this emergency we experience profound judicial reluctance in extending immunity to concerted activities which disrupt essential productive processes and sap the defensive power of the nation upon which labor and industry alike depend for protection. But although a state of war may be relevant in marking the boundaries of free speech in industrial conflicts it cannot affect the controlling force of federal statute.

The injunction is dissolved, and the decree of the circuit court is reversed. Neither party shall recover costs.