STATE ex rel ANDERSON et al, *Petitioners,*
*v.*
PAULUS, *Defendant.*
(SC 25771)
583 P2d 531

Richard P. Benner, Portland, argued the cause for petitioners.

John A. Reuling, Jr., Senior Assistant Attorney General, Salem, argued the cause for defendant.

PER CURIAM.

**PER CURIAM.**

Petitioners ask this court to issue a writ of mandamus directing the Secretary of State to accept for publication in the Voters' Pamphlet for the November general election a certain explanatory statement prepared for Ballot Measure 10, an initiative measure.[1] Petitioners are three members of the five-member committee selected pursuant to ORS 254.210(1) to prepare such a statement.[2]

The statutes provide that the committee, prior to the election, "shall prepare for the particular measure and file as a public document with the Secretary of State, an impartial, simple and understandable statement explaining the measure and its effect." ORS 254.222(1). The Secretary of State then holds a public hearing "for the purpose of receiving suggested changes in any statement." ORS 254.222(2). After the hearing, the committee makes any changes in the statement which it considers proper; then,

"* * * [i]t shall file any revised statement with the Secretary of State not later than 95 days before the election. The original statement and any revised statement shall be concurred in and certified by the committee or at least three of its members. If a member does not concur, the statement shall show only that he dissents." ORS 254.222(3).

If the committee fails to file a statement "in the manner provided by ORS 254.222," then a statement prepared by the Legislative Counsel Committee serves as the explanatory statement in the Voters' Pamphlet. ORS 254.225, 255.410.

According to the petition before us and the supporting affidavits, the Secretary of State has refused to

[1] Ballot Measure 10 is a proposed constitutional amendment concerning land use planning and zoning.

[2] The committee consists of two proponents of the measure, two opponents, and a fifth member selected by the first four or, if they do not agree, by the Secretary of State.

accept the revised explanatory statement approved by petitioners, who constitute a majority of the committee, because the copy filed with the Secretary of State's office on the statutory deadline was not signed by at least three committee members. Instead, the Secretary proposes to submit for publication the statement prepared by the Legislative Counsel Committee.[3]

It appears that a copy of the revised statement, in which petitioners as a majority of the committee concurred, was delivered to the Secretary late in the afternoon of August 4, the statutory deadline, by another member of the committee together with notice of his own and the fifth committee member's dissent. Before the close of business that same day, the Secretary and her aide in the Elections Division spoke to petitioners individually by telephone. During these telephone conversations each of the petitioners had before him a copy of the revised statement and confirmed that the document delivered to the Secretary was the final revised version of the statement in which he had concurred. In each case this was accomplished by reading aloud and verifying portions of the document, including in each case those portions of the statement which distinguished it from earlier versions. Each of the petitioners, during these conversations, informed the Secretary or her aide that he concurred in the revised statement which had been filed with her office. Written confirmation of his concurrence was provided to the Secretary by each petitioner, but not until after August 4, the final day for filing.

The issue is whether these events constitute compliance with the requirement of ORS 254.222(3) that the revised statement, certified by at least three

---

[3]The parties have suggested the possibility, under the provisions of ORS 254.222, that if the revised statement was not properly filed it is the committee's original statement, rather than that prepared by the Legislative Counsel Committee, which should be published in the Voters' Pamphlet. The issue is not presented to us by the petition, and we express no opinion concerning it. Likewise, no issue is presented as to the requirements for a valid statement by the Legislative Counsel Committee.

[ 244 ]

members of the committee, be filed with the Secretary by the statutory deadline. The controlling question is whether the statement was "certified." That term is not defined in the statutes setting out the procedures to be followed in preparing the statements for the Voters' Pamphlet. The Secretary contends that a certification must be in writing.

■ In general usage, certification may be accomplished without a writing. Webster's New International Dictionary of the English Language (2d ed Unabridged 1961) includes the following relevant definitions of the verb "certify":

"1. To give certain information of; to make certain, as a fact; to attest authoritatively; to verify.

"2. To testify to in writing; to make a declaration concerning, in writing, under hand, or hand and seal. [Example omitted.]

"3. To give certain information to; assure; make certain."

Of these three definitions applicable to general usage of the word, only one—the second—includes a writing as an integral part of the act of certification. It appears, however, that this is the very meaning which has attached to the word when it is used in legislative enactments.

In *State v. Gee,* 28 Or 100, 105, 42 P 7 (1895) this court said, "To 'certify' means simply 'to testify in writing'; 'to make a declaration in writing'—Webster." And in *Stone Logging Co. v. Int. Woodworkers,* 171 Or 13, 36, 135 P2d 759 (1943), the opinion states:

"* * * It conclusively appears that no action was taken by the National Labor Relations Board which could rise to the dignity of a certification. The informal [oral] statement of a field representative of the board * * * does not constitute a decision or a certification within the meaning of 29 U.S.C.A. § 159."

Neither case is dispositive of the question whether there can be an oral certification. In *State v. Gee, supra,* the question was the adequacy of a writing; the

[ 245 ]

possibility of oral certification was not involved. In *Stone Logging Co.* the statute itself required that the matter be certified "in writing." 171 Or at 24.

In other jurisdictions, however, the question occasionally has arisen whether a legislative enactment which requires that a matter be "certified," without more, requires a writing. The few cases which we have discovered unanimously hold that it does. *Chicago & E.I.R. Co. v. People,* 200 Ill 237, 65 NE 701, 704 (1902); *State v. Boner,* 186 NW2d 161, 164-65 (Iowa 1971); *State v. Eyrich,* 120 Ohio App 338, 195 NE2d 371, 376 (1963). The opinion in the *Eyrich* case says:

> "The Court has searched through most standard legal works dealing with the terms 'certify', 'certified' and 'certification', and at no point in the law is there any indication that such an act can take place without being endorsed in one way or another upon a document or other paper-writing." 195 NE2d at 376.

Our own search has produced the same result. That result is consistent with the usual purposes of a legislative requirement of certification—to secure not only a present assurance that a fact is true or a document genuine, but also to provide a record of that assurance for future reliance. Such a requirement not only provides a record for future reference, but also provides some protection against collusion, or accusations of collusion, between the public official and the individuals involved. Without the requirement of a writing, the question whether a fact or a document has been verified or attested to might depend entirely upon the disputed word of the parties to a private conversation. This kind of problem can be avoided to a considerable extent by the requirement of a writing. We conclude that when the legislature required that the statement be certified, it was attempting to minimize the possibility of just such problems, and that, using the word in the sense in which it is generally used in the law, it intended to require a writing.

[ 246 ]

■ Petitioners contend, however, that the lack of a written certification was a curable defect which was, in fact, cured by the prompt submission by each of them of a written confirmation of their approval of the revised statement. They argue that the statement was, therefore, filed in substantial compliance with the statute. This is a close question.

It appears that on the final day for filing the Secretary had in her possession both the written statement and the information, provided personally by each of the majority members of the committee, that the statement was the one which the majority had approved. Shortly thereafter her records were completed by the receipt of written confirmation of that information. The defect did not produce either any actual uncertainty about the committee's position or the need for any substantial delay in the preparation of written materials for the Voters' Pamphlet.

On the other hand, the statutory deadline for filing these statements is just one of a series of deadlines which are part of the legislative scheme for preparation for an election. Moreover, the legislature has expressly provided, in ORS 246.021, for how those deadlines are to be met.[4] Although the statute does not deal directly with the problem before us, it does indicate an intention that, with the exception provided

---

[4] ORS 246.021 provides:

"(1) All declarations of candidacy for nomination for a public office, completed nominating petitions, statements and portrait cuts for official Voters' Pamphlets, reports of election campaign contributions and expenditures, initiative and referendum petitions and other papers and documents of like nature, required by law to be filed with the Secretary of State, county clerk, county registrar of elections, city clerk, recorder, auditor or other elections officer, not later than a specified number of days prior or subsequent to an election, must be delivered to and actually received at the office of the designated official not later than 5 p.m. of the last day permitted by law for such filing.

"(2) The exception to the provisions contained in subsection (1) of this section is, when at 5 p.m. an individual is physically present in the office of the designated officer and in line awaiting his turn to deliver a document, he shall be considered as having begun the act of delivering the document and shall be permitted to file same."

in the statute itself, filing deadlines are to be strictly applied. If the Secretary or other officer were required to await the possible cure, after the statutory deadline, of defects which are not merely insubstantial matters of form,[5] the entire election preparation timetable could be undermined.

On balance, we find the latter consideration to be more persuasive and hold that, in view of the over-all scheme of the elections statutes, the legislature intended that the filing of a properly certified statement must be timely in order for that statement to be included in the Voters' Pamphlet. The defect in this case—the lack of certification—was substantial and it may not be cured by certifications submitted after the filing deadline.

The petition for a writ of mandamus is denied.

---

[5] *See, e.g.,* the cases cited by petitioners: *Nomination of Kloiber,* 26 Pa Cmwlth 50, 362 A2d 484 (1976) (failure to impress seal on affidavits); *Reed v. Power,* 37 App Div2d 793, 324 NYS2d 864 (1971) (failure to number consecutively pages of petition); *Mosley v. Board of Elections of District of Columbia,* 283 A2d 210 (US App DC 1971) (omission of date on petitions); *State ex rel Pucel v. Green,* 101 Ohio App 531, 133 NE2d 170 (1956) (one signature out of forty on petition technically invalid; no suggestion of *fraud; held,* other signatures not thereby invalidated).