On petition for alternative writ of mandamus filed September 10,* petition for writ of mandamus denied September 13, 1990

STATE ex rel Barbara ROBERTS,
Anthony Meeker, Fred D. Miller and
Richard A. Munn and Dick Sohrt,
*Plaintiff-Relators,*

*v.*

Robert B. McCONVILLE,
*Defendant.*

(SC S37465)

797 P2d 365

Virginia L. Linder, Solicitor General, Salem, for plaintiff-relators. With her on the petition were Dave Frohnmayer, Attorney General, and Michael D. Reynolds, Assistant Solicitor General, Salem.

David R. Barrow, Portland, for defendant. With him on the response were Gregory W. Byrne and Byrne & Barrow, Portland.

Gillette, J., dissented and filed an opinion. Fadeley, J., dissented and filed an opinion.

---

* Relating to the judgment of Marion County Circuit Court, Robert B. McConville, Judge.

**GILLETTE, J.,** dissenting.

I would issue an alternative writ of mandamus, and therefore dissent from the majority's decision to the contrary.

While the analysis in the separate dissent of Fadeley, J., may be correct, I see no need to go into the merits here. For me, it is sufficient that a vital interest of the electorate is affected by the decisions of the trial court and there is no time for the normal appellate process to be carried out. I mean no disrespect to the two able trial judges whose decisions are at issue here when I say that, if at all possible, the people of this state are entitled to be assured by this court that those decisions are correct.

I respectfully dissent.

**FADELEY, J.,** dissenting.

A circuit court judge has enjoined the state's chief election officer from providing information to the voters which a statute plainly mandates that voters receive before they vote whether initiative or referendum proposals shall become state law. The statutory mandate provides that the information "*shall* be printed in the Voters' Pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year." (Emphasis added.) The circuit judge's decision provides that:

> "[S]uch financial impact statements may not be printed in the voter's pamphlet or on the ballot. * * * [D]efendants, and each of them, and anyone acting under their authority are enjoined from printing such financial impact statements in the voter's pamphlet and on the ballot for the November 6, 1990, general election."

The Secretary of State, joined by the State Treasurer, the Director of the State Executive Department, the Director of the State Department of Revenue and the State Printer, seek our help to enforce the statutory mandate that the voters receive the information. This court should, at the least, be open to considering whether the law will permit it to enforce the main purpose of the statute or whether, as argued, its hands are tied by its own prior decisions rendered in significantly different settings. I dissent from the court's decision denying any form of the writ of mandamus sought.

Instead of denying the petition without hearing, I would allow an alternative writ requiring the proponent of the injunction — which prohibits dissemination of useful information — to show cause why the statutory mandate should not be carried out by printing in the Voters' Pamphlet the tax cost or other financial impact of the laws which voters are asked to adopt or reject this November 6th.

Taking the allegations of the petition as fact, the state election official received and officially filed the mandated information concerning financial effects of proposed laws before the 90th day before the upcoming November election. But, the responsible state officials assisting the Secretary of State in preparation of the information, and the Secretary of State, neglected to sign the documents until after the 90th day, although they have now done so. State officials still have a physical capability to print the information on the ballot and in the Voters' Pamphlet, provided that the law supports lifting the circuit judge's injunction by September 21 (*i.e.,* by 45 days before election day).

Presumably the majority, who deny what may be the only effective option for challenging the injunction,[1] and the circuit judge who issued it, believe that this court's prior decisions have painted state election officials into a corner on this subject to an extent which makes any further hearing on or examination of the subject futile. I turn to an examination of whether that presumption, in which I do not indulge personally, is necessarily the only proper result from our prior cases.

The citizens who obtained the injunction[2] contend that, based on our prior decision in *State ex rel Anderson v. Paulus,* 283 Or 241, 583 P2d 531 (1978), the Secretary of State's act of accepting and officially filing the information about financial impacts of eight ballot measures is and was impermissible. From that conclusion they reason, now with the support of a trial judge's injunction covering two of the

---

[1] *But see* ORS 246.910.

[2] In Marion County Circuit Court case No. 90C-11740-1, *Dennehy and Buchanan v. Roberts, Meeker, Miller, Munn, and Sohrt.*

The injunction was entered September 6, 1990. The majority's decision to deny the Petition for Mandamus filed on September 10, was taken September 11.

eight measures, that nothing can now be done to carry out the mandate to inform the voters.

At the time *Anderson* was decided, an additional statute provided that Legislative Counsel also draft a backup explanatory statement, which would then be printed in the Voters' Pamphlet if the "official committee" failed to certify its explanation of a measure in time. *Anderson* did not prevent voter receipt of needed information as does the injunction central to this petition.

*Anderson, supra,* involved a contest between two explanatory statements. One explanation was prepared by members of a committee, divided in their opinions of what to say until the eleventh hour. The final revision, was "delivered to the Secretary of State late in the afternoon of August 4, the statutory deadline, by another member of the committee together with notice of his own and a fifth committee member's dissent." 283 Or at 244. The Secretary of State contacted each member of the majority by telephone before close of business that day and each separately verified the accuracy of and his assent to the revised explanation. "Written confirmation of his concurrence was provided to the Secretary by each petitioner, but not until after August 4, the final day for filing." 283 Or at 244. The second explanation was that prepared by Legislative Counsel.

The then Secretary of State *refused to accept* the committee's revised explanation and proposed to use Legislative Counsel's explanation instead. 283 Or at 243-44. Petitioners in *Anderson* sought to compel the Secretary of State to print the explanation of the committee majority rather than that prepared by Legislative Counsel. The court held that the word "certified," as used in the filing deadline statutory sentence, is "intended to require a writing." 283 Or at 246. In reaching that conclusion the court reasoned that:

> "Such a requirement not only provides a record for future reference, but also provides some protection against collusion, or accusations of collusion, between the public official and the individuals involved. Without the requirement of a writing, the question whether a fact or a document has been verified or attested to might depend entirely upon the disputed word of the parties to a private conversation. This kind of problem

can be avoided to a considerable extent by the requirement of a writing."

That concern might, on a hearing in this case, prove inapplicable because the Secretary of State has accepted and filed the fiscal statement. No one challenges its accuracy. It cannot be changed.

Rejecting the contention that the defect for lack of written certification could be cured after the filing deadline even though the state election official had refused to file the explanation at all before the deadline, the *Anderson* court explained that:

> "If the Secretary or other officer were required to await the possible cure, after the statutory deadline, of defects which are not merely insubstantial matters of form, the entire election preparation timetable could be undermined. * * *[I]n view of the over-all scheme of the elections statutes, the legislature intended that the filing of a properly certified statement must be timely in order for that statement to be included in the Voters' Pamphlet. The defect in this case — the lack of certification — was substantial and it may not be cured by certifications submitted after the filing deadline." *Id.* at 248. (Footnote omitted.)

Thus, the Secretary of State printed Legislative Counsel's explanation in the Voters' Pamphlet for use by the voters, not the committee's uncertified (and unfiled) document. As can be seen, *Anderson* is not direct authority for enjoining the Secretary of State from printing *any* statement of effects on taxes or expenditures.

*State ex rel Bunn v. Roberts,* 302 Or 72, 726 P2d 925 (1986) should also be noted. That case upheld printing of a fiscal impact statement on the ballot and in the Voters' Pamphlet against challenges which the court held were not timely commenced. A concurring opinion decried "resolution of important elections questions on technical procedural grounds." Peterson, C. J., concurring, 302 Or at 85, joined by Jones, J.

The citizens who obtained the injunction also contend that all statutorily designated state officials must concur in the financial effects statement mandated by ORS 250.125 before it may be printed for the voters enlightenment. They rely upon an amendment to the financial effects statement

adopted by Oregon Laws of 1987, chapter 725, Section 6.[3] The relevant portion of the sentence, with a deletion made by the 1987 amendment in brackets, reads:

"The estimate shall be certified by [at least two of] the officials named in this section."

The citizens argue that deletion of "at least two" means that all named officials must concur in and certify the proposal before it may be printed. In this case the State Treasurer did not concur in the financial impact statement which the Secretary of State nonetheless accepted, filed and stands ready to print but for the injunction. Therefore, that interpretation would empower any one of the four named officials to block the information from going to the voters via the ballot and Voters' Pamphlet. Moreover, that interpretation would prevent the Secretary of State from abiding by the mandate of another sentence in the same section that:

"The estimate *shall* be printed in the Voters' Pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year." (Emphasis added.)

That interpretation, nullifying the main purpose of the section at the instance of one out of four named officials, could potentially violate the spirit of statutory construction guides set forth in ORS 174.020 and 174.030.[4]

Here it is not at all clear that the legislature's directive to inform the voters, themselves acting in a legislative capacity in this context, should be nullified by the choice of an executive branch official. Nor, equally, should it be nullified

---

[3] The amendment is not the major purpose of the bill involved, HB 2461. It is not mentioned in the summary of that bill. 1987 Legislative Calendar and Journal at H-91. The trial court did not accept this ground for issuing its injunction but the attorneys for the citizens who obtained the injunction, now acting as attorneys for the judge who issued it, urge the ground as a reason why we should not issue a writ.

[4] ORS 174.020 provides:

"In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."

ORS 174.030 provides:

"Where a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to prevail."

by a judicial branch determination that the delay in certification past the deadline cancels the decision of the executive branch officer, carried into effect before the deadline, to accept and officially file the statutorily required statement, albeit without certification.

Here the executive official entrusted by our constitution and statutes with election matters officially accepted and filed the text of the information before the deadline. The proponents of the judicial branch injunction preventing her exercise of her duties as she sees them should be required to show why the injunction should not be lifted. Failing that showing, to be made before this court in response to an alternative writ of mandamus, the injunction should be lifted. We have time to act, deliberate and decide. That we should do.

I would issue an alternative writ of mandamus.