I. INTRODUCTION
This case comes before the court on Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. The parties have also submitted a Stipulation of Facts and a Supplemental Stipulation of Facts. Plaintiff (the department) appeals a Magistrate Division decision in favor of Defendants. Defendants (taxpayers) request that the decision of the magistrate be upheld. The department was represented by counsel. Taxpayers appeared prose.
 II. FACTS
Taxpayers timely filed a joint personal income tax return for tax year 1997 that reported a small amount of business income and no wages. No refund was requested on that return. Taxpayers filed an amended federal return for the 1997 tax year dated January 6, 1999, and taxpayers filed an amended Oregon return on January 22, 1999, apparently because they were required to do so under ORS314.380.[1] The amended return reported no income and no tax due, and no refund was requested. The only difference between the two returns is that an unsigned copy of taxpayers' federal return and a two-page memorandum from taxpayers were attached to the amended state return. The department examined the returns that it had and issued a Notice of Deficiency (NOD) to taxpayers on October 5, 1999, for the 1997 tax year, based on its belief that taxpayers had substantially understated their income. The NOD was printed with the name and logo of the department. The NOD states that the department adjusted taxpayers return "in good faith" and "not for the purpose of extending the period during which the department may assess additional taxes against you." Beneath those words are printed the name, title, location, and telephone number of *Page 180 
Larry Boyd (Boyd), the auditor who processed the assessment. The NOD also contains a statement that references the statutes under which the adjustments were made and the reasons for the adjustments. Boyd testified that he caused the issuance of the NOD and that he was aware that the NOD would contain those statements. The department issued a Notice of Tax Assessment (NOA) to taxpayers on December 14, 1999, that assessed taxes, interest, and penalties for tax year 1997.
Taxpayers appealed the NOA to the Magistrate Division of this court, where they argued that the NOD did not meet the requirements of ORS 305.265(2)(c) because it did not include the auditor's handwritten signature or the language "I certify" or "it is certified." The magistrate agreed with taxpayers, and this appeal ensued.
 III. ISSUE
Does the NOD issued to taxpayers meet statutory requirements of ORS 305.265(2)(c)?[2]
 IV. ANALYSIS
The purpose of ORS 305.265 is to provide taxpayers with notice that the department is contemplating a deficiency assessment against them. See ORS 305.265(2). That notice of deficiency must meet certain requirements. Specifically, it must:
 "(a) State the reason for each adjustment;
 "(b) Give a reference to the statute, regulation or department ruling upon which the adjustment is based; and
 "(c) Be certified by the department that the adjustments are made in good faith and not for the purpose of extending the period of assessment."
ORS 305.265(2). It is not disputed that the NOD meets the requirements of both paragraphs (a) and (b) by stating the reasons for each adjustment and referencing the statutes on *Page 181 
which the adjustments were based. Taxpayers contend, rather, that the NOD must include a handwritten signature and use language such as "I certify" or "it is certified." The department raises several arguments. First, the department asserts that ORS305.265(2) does not require the NOD to be signed, or, if the statute does require a signature, that the department logo and the printed name, title, location, and telephone number of the auditor fulfill that requirement. The department also argues that the printed name, title, location, and telephone number, taken together, is an adopted mark that suffices as a signature. Finally, the department argues that its substantial compliance with the statute makes the NOD valid.
A. Handwritten Signature
The court must be guided in its interpretation of ORS 305.265 byPGE v. Bureau of Labor and Industries, 317 Or 606,859 P2d 1143 (1993). PGE provides that when "interpreting a statute, the court's task is to discern the intent of the legislature." Id. at 610. The "text of the statutory provision itself is * * * the best evidence of the legislature's intent." Id. Words are to "be given their plain, natural, and ordinary meaning." Id. at 611. Accordingly, the court looks to the definition of the verb "to certify," which is:
 "1: to attest esp. authoritatively or formally * * * a: CONFIRM * * * b: to present in formal communication, esp. in a document under hand or seal * * * c: to confirm or attest often by a document under hand or seal as being true, meeting a standard, or being as represented * * * 2: to inform with certainty: ASSURE * * *."
Webster's Third New Int'l Dictionary 367 (unabridged ed 2002). Black's Law Dictionary defines the term similarly: "1. To authenticate or verify in writing. 2. To attest as being true or as meeting certain criteria." Black's LawDictionary 220 (7th ed 1999).
The above definition clearly shows that a certification is required to be made in writing. That conclusion is supported byState ex rel Anderson v. Paulus, 283 Or 241, 583 P2d 531
(1978), on which taxpayers rely to support their position. InAnderson, the Supreme Court concluded that a mere oral statement was not a "certification" as required by ORS *Page 182 
245.222, which governs information that is to be placed in the Voters' Pamphlet. 283 Or at 245-46. The court did not address the issue of whether certification required a hand-written signature, but only concluded that, as "used in legislative enactments," certification required a "writing." Id. at 245. The court noted that "the usual purposes of a legislative requirement of certification [are] to secure not only a present assurance that a fact is true or a document genuine, but also to provide a record of that assurance for future reliance." Id.
at 246.
That does not mean, however, that the required writing must be signed by hand, and, indeed, a present assurance that a "document is genuine" and preservation that assurance can easily be accomplished without a handwritten signature. Id. In addition, of the four definitions in Webster's above, only two can be read to refer to a handwritten signature.Webster's at 367. In both instances the words "under hand or seal" are used, but with qualifying language — the words "especially" and "often." Id. The term "especially" modifies only the phrase "in a document under hand or seal," not the entire definition, which states that to certify is "to present in a formal communication." Id.
Accordingly, presentation in formal communication itself is sufficient to certify something, but such a communication is likely to take the form of a document under hand or seal. It does not necessarily follow that such a communication must be "under hand or seal" to be certified. That reading is consistent with the use of the word "often" later in the definition: confirmation of something "being true, meeting a standard, or being as represented," id., may occur in a form other than a document "under hand or seal," but often that is the form such confirmation takes. If certification could not occur absent a handwritten signature, the definition would simply state that to certify means to attest in a document under hand or seal rather than using the qualifying terms "often" and "especially."
The court concludes that an examination of the text and context of the statutory provision demonstrates that a certification must be made in writing, but that the term "certify" is still ambiguous as to whether a handwritten signature is required. If the legislature's intent is not clear from *Page 183 
the text and context, the court must "consider legislative history" to determine legislative intent.[3] PGE,317 Or at 611-12.
The text at issue was amended in 1971, by House Bill 1324.[4]
Or Laws 1971, ch 333, § 1. The former version of the statute read as follows:
 "The notice shall state the reason for each proposed adjustment to the return and a reference to the statute, regulation, or department ruling upon which the proposed adjustment is based. Each notice of deficiency and proposed assessment shall be certified by the auditor who audited the return that he has audited the return and that the proposed adjustments to the return are made in good faith and not for the purpose of extending the period of assessment."
ORS 314.405(1) (1969) (emphasis added).[5] It was amended to read as follows:
"[T]he notice shall:
 "(a) State the reason for each proposed adjustment to the return; and
 "(b) Give a reference to the statute, regulation or department ruling upon which the proposed adjustment is based; and
 "(c) Be certified by the department that the proposed adjustments to the return are made in good faith and not for the purpose of extending the period of assessment."
Or Laws 1971, ch 333, § 1 (emphasis added).
At an April 14, 1971, hearing, the department proposed that the entire certification requirement be removed because it wished to facilitate the use of computers in issuing assessments.See Tape Recording, Senate Committee on Taxation, HB 1324, Apr 14, 1971, Tape 8, Side A (statement of T. A. Lindstrom, Oregon Department of Revenue). The *Page 184 
department wanted to eliminate any handwritten signature requirement because it kept the department "from being able to utilize [its] computer in computing and sending out * * * notices" due to the fact that the NODs had to be returned "to the auditor who made the audit" for signature. Id.
The bill later returned to committee amid concerns about removing the entire certification requirement. See
Minutes, Senate Committee on Taxation, May 7, 1971, 1. Assistant Attorney General Ted DeLooze and department representative Mike McCormack testified that the department did not object to having the department certify the notices, but that they did "want to eliminate the hand signing by the individual auditor."Id. The "bill was so amended * * *."[6] Id.
It can be inferred from those remarks that it was understood that the department, as an entity, would be unable to provide a handwritten signature, but would continue to certify the NODs.
The legislative history shows that the bill was amended in accordance with the department's wishes that they be able to streamline the NOD issuing process by exclusive utilization of computer-generated NODs. To effectuate that goal, the hand-signing requirement was removed because the process of obtaining handwritten signatures entirely negated the effect of upgrading to computer-generated NODs. It follows that, to give full effect to the legislature's intent, no handwritten signature of any kind can be required. Accordingly, the court concludes that the phrase "be certified by the department" does not require that the NOD be signed by hand.
Taxpayers contend that, because the only change in 1971 to the text at issue was replacing "auditor" with "the department," that a handwritten signature is still required, just not necessarily that of the auditor. Taxpayers' argument is contradictory. Taxpayers stated in oral argument that the 1971 amendment, as they interpret it, now allows anyone at the department to sign the NOD. Taxpayers also acknowledged, however, that if the concerns of the legislature are to *Page 185 
be addressed, the purpose of a personal certification would be to require the person signing the NOD to be someone knowledgeable about the facts of the audit. It is clear to the court that such a person could necessarily only be the auditor who has worked up the case. For another person to become knowledgeable about the facts of the audit, that person would have to duplicate the auditor's work, which would be contrary to the 1971 amendment's purpose of streamlining the issuance of NODs. If the court were to accept taxpayers' argument, it would be concluding that the 1971 change to the statute was a nullity and had no effect whatsoever. The court may not interpret any legislative action as having no effect. See State v. Stamper, 197 Or App 413,418, 106 P2d 172, rev den, 339 Or 230 (2005) ("the legislature did not intend any portion of its enactments to be meaningless surplusage"); ORS 174.010.
It is not clear to the court why taxpayers' interests would be better served by a handwritten signature than by Boyd's computer-generated certification. The certification on the NOD was caused to be affixed to the NOD by Boyd, someone knowledgeable about the facts of the audit who also knew that the certification language would appear next to his name on the NOD. A handwritten signature could not somehow better assure the taxpayers of the department's good faith. Taxpayers argued that without a handwritten signature they would have no assurance as to who prepared the NOD; the court notes that a handwritten signature would not eliminate that concern. A taxpayer's protection against a NOD issued in violation of the statutory requisites is appeal to this court.
Taxpayers rely on Lake v. MVD, 133 Or App 550,892 P2d 1025 (1995), to support their argument that a handwritten signature is required. In Lake, petitioner's driver's license was suspended after the results of an alcohol breath test were admitted into evidence at the revocation hearing.Id. at 552. The machine used for the test was required to be periodically tested and certified by a trained technician.Id. at 553. The Court of Appeals concluded that the handwritten signature of the certifying technician was necessary if the results were to be admitted into evidence at the hearing.Id. at 554. Tax-payers' reliance is misplaced. *Page 186 
In Lake, the certification at issue was one requirement "among a group of requirements * * * designed to safeguard testing procedures when chemical analyses are performed on a person's blood." Id. The court in Lake held that the results could not be admitted into evidence without a handwritten signature on the certification. Id. That certification and the one at issue here differ. Under the statute at issue in Lake, a natural person — a trained technician — is required "to test and certify" equipment. Certification by an agency alone, without the identification of the individual providing the certificate, is not allowed. ORS305.265 requires and permits an entity — the department — to certify its good faith. Although a natural person, a technician, can produce a handwritten signature, an entity such as the department cannot.
B. Inclusion of the words "I certify" or "It iscertified"
Taxpayers argue that the language in the NOD must utilize some form of the word "certify" in order to be certified by the department. The court will not so elevate form over substance. There may be cases where a certain form is required by statute, such as Oregon Rules of Civil Procedure (ORCP) 7 F, but absent such a condition, the substance controls. As discussed above, the certification is to be, in substance, an authoritative assurance of good faith on the part of the department, made in writing, and caused to be affixed to the NOD by an individual knowledgeable about the facts of the audit. It need not contain particular words to achieve that objective. So long as the certification accomplishes the requisite authoritative assurance of good faith, it is sufficient. The written statements in the NOD at issue here meet that test.
 V. CONCLUSION
The court concludes that, based on the legislative history of ORS305.265, an NOD is not required to include a handwritten signature nor contain the words "I certify" or "it is certified" to satisfy the requirements of the statute. Now, therefore,
IT IS ORDERED that the department's Motion for Partial Summary Judgment be granted.
IT IS FURTHER ORDERED that taxpayers' Motion for Summary Judgment be denied. *Page 187 
IT IS FURTHER ORDERED that this case shall be retained in the Regular Division of the Court for completion in due course.
Costs are awarded to neither party.
[1] All references to the Oregon Revised Statutes (ORS) are to 1997.
[2] The department would have been required to follow the procedures set forth in ORS 305.270, which vary slightly from those in ORS 305.265, if taxpayers had requested a refund on either their return or amended return.
[3] It does not appear that the magistrate was provided with legislative history.
[4] The text at issue has not changed significantly since that time. The phrase "adjustments to the return" was changed to simply "adjustments" in 1977. Or Laws 1977, ch 870, § 3.
[5] In 1977, the text of what is now ORS 305.265(2)(c) was moved from ORS 314.405 to its present location. See Or Laws 1977, ch 870, §§ 3, 22.
[6] The tape for the May 7, 1971, hearing of the Senate Taxation Committee is blank. *Page 188