THE STATE, EX REL. BECKSTEDT ET AL., *v.* EYRICH ET AL., BOARD OF ELECTIONS OF HAMILTON COUNTY.

(No. 9407—Decided October 16, 1963.)

*Mr. Edward P. Reeder, Mr. John L. Gerdsen* and *Mr. Andrew A. Haefner,* for relators.

*Mr. Raymond E. Shannon,* prosecuting attorney, *Mr. Raymond C. Wetherell* and *Mr. Arthur Ney,* for respondents.

*Messrs. Lloyd, Ferguson & Rielly,* for other parties.

HOVER, P. J. Relators, as taxpayers of the city of Norwood and as a committee designated by the signers of an "Initiative

Petition'' to effect the filing thereof and to represent them, bring this action in mandamus seeking an order to the Hamilton County Board of Elections to submit the question proposed by the petition to the electors of the city of Norwood at the general election to be held November 5, 1963.

The respondent board, by answer, bases its refusal to submit the question on the ground that the required statutory certification of the issue to it by the city auditor was not · effected within the time required by law—to wit, ninety days before the election date.

The numerical sufficiency of the petitions and the validity of the signatures thereon is not in issue.

The respondent Dunigan, as a taxpayer, had filed an action in the Court of Common Pleas against the respondent board seeking to prevent the submission of the same issue at the same election. Upon Dunigan's application to this court, he was admitted as an additional respondent. By answer, Dunigan raises the additional issue by way of defense to the requested writ that the proposal is not a proper subject for an initiative petition because (1) it fails to require the adoption of any specific legislation and (2) the city council had already adopted various ordinances covering the same subject matter looking forward to the urban renewal program which the petitions seek to have undertaken. Relators' demurrer to this answer was overruled, as was also the relators' motion to dismiss the answer as a moot question on the ground that relators had undertaken to guarantee the necessary election expense and thus save the city harmless regardless of the legal status of the question proposed.

By reply, relators claim that any statutory limitation on ''questions'' proposed by initiative petition is unconstitutional; that the respondent Dunigan failed to make a request that the city solicitor bring the action in his behalf; that the cause is pending before another court of competent jurisdiction; and that this court lacks authority to consider the effect of the question, if approved by the voters, on present legislation on the same subject or the possible unenforceability of future legislation arising out of the initiated proposal.

By the rules of code pleading in civil matters, the affirmative allegations of the reply will be deemed denied. The court

will address itself first to certain of the above allegations in the relators' reply. This court is not concerned with the question of whether respondent Dunigan made a seasonable request or any request at all upon the City Solicitor of the city of Norwood to bring the action instituted in the court below seeking to enjoin the board of elections from submitting the issue to the voters. By admitting the respondent Dunigan as a party to this case for the sake of litigating all the questions raised in regard to this petition, the court exercised its authority to admit new or proper or appropriate parties to an action for the sake of litigating all of the alleged issues in one case. The claim that the same question is the subject matter of litigation in the Court of Common Pleas is not warranted since the fact is that the board of elections has officially refused to perform the act for which an injunction is sought in the court below. This court agrees with relators that it lacks authority to determine whether legislation presently not in existence, but which might evolve from an affirmative vote on the initiated measure, would repeal existing legislation on the same subject matter or might be unenforceable or unresponsive. Neither of these propositions is in issue here.

The facts surrounding the filing and subsequent handling of the various separate papers constituting the proposed initiative petition are before the court in the form of various exhibits and stipulations. From them it appears that petition papers containing a sufficient number of valid signatures were filed with the Auditor of the city of Norwood on July 26, 1963. The initiative petition reads as follows:

"We, the undersigned, being with the signers of other separate parts of this petition more than ten (10%) per cent of the electors of the city of Norwood, Hamilton County, Ohio, a municipal corporation, hereby petition and request that the following measure: 'Shall Norwood City Council undertake an urban renewal program which includes federal financial assistance?'

"A duly verified copy of such proposed measure has been filed with the City Auditor of Norwood, Ohio, before circulation of said initiative petition, as required by law, be submitted to the electors of said city of Norwood, Ohio, for their

approval or rejection in accordance with the law in such case made and provided.''

The above sentences read literally have no meaning. However, giving the apparent intention of the petitioners the most liberal possible construction and indulging in some transposition, it would seem that the purport of the petition is to request "that the following measure: 'Shall Norwood City Council undertake an urban renewal program which includes federal financial assistance?' be submitted to the electors of the city of Norwood, Ohio, for their approval or rejection in accordance with the law in such case made and provided.'' Only as so transposed and interpreted does the petition propose anything whatsoever. For the purpose of this opinion, the court will adopt this intelligible version of the garbled phraseology.

On the tenth day after filing, to wit, August 5, 1963, the city auditor delivered the petition papers to the board of elections where he had a conversation with a deputy clerk. The exact nature of the conversation is disputed; the auditor stating that he told the clerk that he, the auditor, was required to certify the petitions, did not know how to do it and requested help in the matter. He stated that his purpose in taking the petitions to the board was to certify them. The deputy clerk, on the other hand, stated that no letter accompanied the petitions and that he, the clerk, asked the auditor if the auditor wished the clerk to dictate a letter with regard to them. Accordingly a letter was dictated, signed by the auditor and left with the clerk of the board. As a result of the receipt of the letter and the petitions, the board of elections checked the signatures on the petitions to determine whether they appeared to be valid signatures of registered electors. On August 6, 1963, the board completed its check of the names, called the auditor and so advised him; and the auditor had the petitions taken from the office of the board and returned to him.

Apparently this was the only communication between the city auditor and the board until September 4, 1963, when the board of elections received another letter from the auditor relative to the petitions. It was this letter which the board con-

sidered as a request to place the petitions on the ballot for the November, 1963, election—a request which the board refused and which refusal provided the basis of this litigation.

The letters referred to above appear as Exhibits "A," "B" and "C" in the record. Regardless of what might have been the intention of the city auditor, the letter to the board dated August 5, 1963 (Exhibit "A"), which he signed, stated that he was submitting the petitions and requested the board to check them and report valid and invalid names to the auditor. The board's letter of August 6 (Exhibit "B") addressed to the auditor did exactly this and noted the return of the petitions to the auditor. The letter of September 4 (Exhibit "C") from the auditor to the board is unquestionably a request to place the issue proposed by the initiative petition on the ballot for the November 5, 1963, election, and is undoubtedly a sufficient certification by the auditor to effect a compliance with the statute, Section 731.28, Revised Code. This letter however is dated sixty-one days prior to the proposed election date, while Exhibit "A" is dated ninety days prior to the proposed election date. Since the statute above requires 90 days or more, the certification of September 4 is too late.

The record includes copies of some twenty-two separate and distinct ordinances passed by the city council between January 28, 1958, and August 13, 1963. All of these deal in one way or another with an urban renewal program; the last, in point of time, determining to file an application for a federal loan and grant in a substantial sum for the urban renewal project. Of these ordinances, exactly half dated from October 25, 1960, to May 3, 1963, deal with the subject of obtaining federal assistance for the urban renewal program.

Whether council has been diligent in carrying this project forward is not before this court and is a political rather than a judicial question. The fact is that this extensive activity is more than sufficient to indicate that prior to the filing of the petitions involved in this case the city had undertaken an urban renewal program, which program included proceedings to obtain federal assistance.

Initiated petitions in respect to municipal corporations are derived from Section 1f, Article II of the Constitution of Ohio which provides: "The initiative and referendum powers

are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized to control by legislative action; *such powers shall be exercised in the manner now or hereafter provided by law.*" (Emphasis added.)

It is further required in Section 1 (g), Article II of the Constitution that an initiated measure "shall contain a full and correct copy of the title and text of * * * the proposed law."

It will be noted that these sections are not self-executing but the rights conferred are to be exercised in the manner conferred by law and that, as to the Constitution at least, the initiated measure must contain a full and correct copy of the title and text of the proposed law.

The Legislature has carried these provisions into operation by the enactment of Sections 731.28 to 731.41 of the Revised Code. Section 731.28, Revised Code, provides, in effect, that ordinances and other measures may be proposed by initiated petition and that after ten days from the filing of such petitions with the city auditor, the auditor shall certify the text of the proposed ordinances or measures to the board of elections and that the board of elections shall submit the proposed ordinances or measures to the electors of the municipality at the general election occurring ninety days or more after such certification.

The question of whether this particular petition proposes the text of an ordinance or other measure will be considered below. In this case, it is apparent that these petitions were called to the attention of the board of elections by the city auditor on the tenth day. It is probable that this is a sufficient compliance with this particular time requirement, but the question remains whether the auditor at that time, which would have been ninety days before the 1963 election, made any certification whatsoever to the board of elections. As observed above, there is conflict in the record as to the intention of the auditor at this point. It is the opinion of this court, however, that the word "certify" requires more than an intention or a verbal expression of an intention. It requires something, however informal, in writing, which is a communication of record to be construed and accepted by the board of elections as a request to place an issue before the electors. The auditor's letter to the

board of August 5, 1963, was certainly not a request for this purpose but was for a collateral purpose entirely and could not in any circumstances be deemed a certification of the issue.

This court has searched through most standard legal works dealing with the terms "certify," "certified" and "certification," and at no point in the law is there any indication that such an act can take place without being endorsed in one way or another upon a document or other paper writing. It may be all right for an author in the exercise of well-known poetic license to have a colonial soldier sing, "I have marched six weeks in Hell and certify that it is not fire-devil death or anything but boots"; but this use of the word "certify" will not satisfy, insofar as this court can determine, any legal requirement.

It is accordingly the opinion of this court that the auditor's letter to the board of elections of August 5, 1963, requesting the board to check the signatures on the petitions is not a certification of the petition for the purpose of directing the board to place the issue before the voters. It was not until the auditor's subsequent letter of September 4, 1963, that the board received any communication in writing from the auditor which could be considered a certification of the measure. The date of this letter is less than ninety days prior to the November, 1963, general election and, consequently, is not sufficient to authorize the board of elections to place the issue on the ballot at that time.

Under ordinary circumstances this finding would be sufficient to require a dismissal of relators' petition. However, it does not answer the question whether the board of elections would be required to present this same question to the electors at the general election in 1964, which does occur ninety days subsequent to the certification of September 4, 1963. In view of the further conclusions of the court on the issues raised herein, it is not necessary to determine this possible future submission.

The petitions are ineffective to accomplish their purpose for two additional reasons. They do not propose any text of any ordinance or other measure as required both by the Constitution and Section 731.31, Revised Code. These petitions seek to have council embark upon a course of conduct—a course which may be meritorious and desirable but which nevertheless does

not contain any text or other matter to be considered as an ordinance. The petition proposes no enactment, provides no detail or direction as to how the program should be undertaken, and provides no form which could be construed as legislation whether effected by the people themselves or by the council.

Even if one were to consider this proposal in the most liberal manner possible and view it as the text of an ordinance as required, the record is clear that council would undertake to do nothing more or less than what it has already done by a series of enactments stretching over a period of almost six years. It is obvious that council has undertaken an urban renewal program and that council has undertaken various steps to obtain possible federal assistance. To conduct an election on the question of whether or not there shall be done on direct order of the people exactly what council has already attempted to accomplish in the normal course of business of the municipality through its legislative authority would be totally vain and irrelevant. To hold an election under these circumstances would be an imposition upon the electors and upon public funds.

This same proposition was thoroughly considered and decided in a lengthy opinion by the Court of Common Pleas in this county in the case of *DeSilver* v. *Board of Elections*, in 1961, where the same conclusion was reached in regard to similar petitions seeking an initiated proposal. That case was appealed to this court and after the election in question was dismissed as moot. However, the reasoning of the lower court in the case cited was sound and applies with equal force and effect to the petitions herein.

It is accordingly the opinion of this court that the writ of mandamus prayed for be denied for the reasons that the certification was made too late to place the issue on the ballot for the general election in 1963; that the petitions themselves did not propose any law for enactment; and did not propose anything more than what has already been done by council itself.

*Writ denied.*

HILDEBRANT and LONG, JJ., concur.