[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 1.]

THE STATE EX REL. DEBROSSE ET AL. *v.* COOL, PIQUA CITY CLERK, ET AL.

[Cite as *State ex rel. DeBrosse v. Cool*, 1999-Ohio-239.]

*Elections—Initiative petitions—"Appropriation," defined—Proposed ordinance to be certified for submission to the electors—Attorney fees to abide submission of evidence and briefs.*

(No. 99-1430—Submitted and decided September 16, 1999.)

IN MANDAMUS.

_____

{¶ 1} Relators, Robert L. DeBrosse, Joseph C. Goetz, Maxine Orr, Cletus Peltier, and C. Richard Sword, are residents and qualified electors of the city of Piqua, Ohio. On July 9, 1999, relators, acting as the committee for the petitioners, filed an initiative petition with respondent, Piqua City Clerk Rebecca J. Cool, requesting that the following proposed ordinance be placed on the November 2, 1999 general election ballot:

"An Ordinance to retain legal counsel for the purpose of determining ownership of the assets of the Piqua Memorial Medical Center and any legal or beneficial interests of the City of Piqua in such assets.

"WHEREAS, The electors of the City of Piqua, Ohio, desire to determine the legal ownership of Piqua Memorial Medical Center and the related assets and any legal or equitable interests of the City of Piqua in such assets:

"NOW, THEREFORE, BE IT ORDAINED by the Electors of the City of Piqua, Ohio, that:

"Section 1: The City Commission of the City of Piqua, Ohio, shall employ independent legal counsel recognized as competent in matters of charitable trust law to render a legal opinion as to the legal ownership of the lands, buildings, and other assets of the Piqua Memorial Medical Center and as to any legal or equitable

claim by the City of Piqua or residents of the City of Piqua, as a class, as to any legal or beneficial interest in such assets and as to whether any terms or provisions of the Thayer Trust or of Ohio Revised Code Sections 109.34 or 109.35 have been violated or not complied with in connection with the transfer of ownership of the Piqua Memorial Medical Center. Such legal counsel shall further take necessary legal action to preserve any legal or beneficial interests of the City of Piqua or its residents with respect to such assets and/or to recover any such assets and restore any such rights that have been taken contrary to law. Any settlement negotiated by said legal counsel must first be approved by the City Commission after a public hearing providing opportunity for comment by residents of the City of Piqua.

"Section 2. The City Commission shall take all actions required by law, including advertising for bids, to retain such legal counsel and shall retain such legal counsel within sixty (60) days of the passage of this ordinance."

{¶ 2} On July 14, in accordance with Section 28 of the Piqua Charter, Cool certified that relators' initiative petition was properly attested and that it contained three hundred one valid signatures of electors, which was more than the minimum number of signatures required by charter. On the same date that Cool issued her certification, Piqua Director of Law Stephen E. Klein advised the city manager in a memorandum that consistent with Klein's prior June 15 written opinion, the initiative petition had no legal effect and no further action was needed because "Charter Section 14 prohibits initiated appropriation ordinances and * * * Charter Section 53 prohibits an expenditure without an appropriation."

{¶ 3} At the next regular meeting of respondent Piqua Commission on July 19, relator DeBrosse, a commission member, moved that the ordinance proposed by the initiative petition be referred to a committee of the whole and that a public hearing be held on the proposed ordinance within seven days, but the motion failed for lack of a second. Although Section 15 of the Piqua Charter required Cool to submit the proposed ordinance to the commission, she did not do so. The

2

commission did not read the proposed ordinance or refer it to an appropriate committee for public hearings and a report pursuant to Section 15 of the Piqua Charter.

{¶ 4} On July 22, relators requested pursuant to R.C. 733.58 that Klein institute a mandamus action to compel Cool and the commission to proceed on the proposed ordinance. On July 27, in accordance with Section 16 of the Piqua Charter, relators filed a certification with Cool demanding that the proposed ordinance be submitted to the electors. The commission responded that on July 19, it had reviewed Klein's June 15 opinion and that the motion of relator DeBrosse had failed for the lack of a second. Klein rejected relators' request to file a mandamus action and informed relators that he had not changed his June 15 opinion on the matter. Klein further noted that if relators' interpretation of the ordinance were correct, the ordinance would not affect an issue that Piqua could control by "legislative action."

{¶ 5} Relators then filed this action for a writ of mandamus to compel Cool to certify to the commission that relators filed a certified copy of the proposed ordinance for submission to the electors under Section 16 of the Piqua Charter and to compel the commission to submit the proposed ordinance to the electors in accordance with Section 17 of the Piqua Charter. Relators alternatively request, pursuant to Section 15 of the Piqua Charter, a writ of mandamus (1) ordering Cool to submit the ordinance proposed by the initiative petition to the commission, (2) ordering the commission to immediately read the proposed ordinance and submit it to an appropriate committee, (3) ordering the committee to conduct a public hearing on the proposed ordinance and report its recommendations to the commission, and (4) ordering the commission to take final action on the proposed ordinance. Relators further request that if the court does not issue a peremptory writ, it should issue an alternative writ "expediting the presentation of evidence and briefing in this case." On August 17, respondents filed an answer admitting the pertinent

factual allegations of relators' complaint. Respondents subsequently filed a motion for judgment on the pleadings.

**{¶ 6}** This cause is now before the court for our determination pursuant to S.Ct.Prac.R. X(5).

_____

*Donald J. McTigue*, for relators.

*Stephen E. Klein*, Piqua Director of Law, for respondents.

_____

**Per Curiam.**

S.Ct.Prac.R. X(5) Standards; Expedited Consideration

**{¶ 7}** Under S.Ct.Prac.R. X(5), we must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. We apply the following standards to render this determination:

" 'Under S.Ct.Prac.R. X(5), dismissal is appropriate if it appears beyond doubt, after presuming the truth of all material factual allegations and making all reasonable inferences in favor of relator, that relator is not entitled to the requested extraordinary relief. If, on the other hand, the complaint may have merit, an alternative writ should issue. Finally, if it appears beyond doubt that relator is entitled to the requested extraordinary relief, a peremptory writ should issue.' " (Citations omitted.) *State ex rel. Dist. 1199, Health Care & Social Serv. Union, AFL-CIO v. Lawrence Cty. Gen. Hosp.* (1998), 83 Ohio St.3d 351, 352-353, 699 N.E.2d 1281, 1282, quoting *State ex rel. Stern v. Mascio* (1998), 81 Ohio St.3d 297, 298, 691 N.E.2d 253, 254.

**{¶ 8}** With the foregoing guidelines in mind, we now proceed with our determination under S.Ct.Prac.R. X(5).

Mandamus; Peremptory Writ

{¶ 9} Relators assert that they are entitled to the requested writ based on the pertinent initiative provisions of the charter:

"Section 15  Consideration of Initiated Ordinance by Commission.

"If an initiative petition or amended petition be found sufficient by the city clerk he shall immediately so certify and promptly submit the proposed ordinance therein set forth to the commission which shall at once read it and refer it to an appropriate committee, which may be a committee of the whole.  Provision shall be made for public hearings upon the proposed ordinance before the committee to which it is referred.  Thereafter the committee shall report the proposed ordinance to the commission, with its recommendations thereon, not later than sixty days after the date on which it was submitted to the commission by the city clerk.  Upon receiving the proposed ordinance from the committee the commission shall proceed at once to consider it and to take final action thereon within thirty days from the date of such committee report.

"Section 16  Submission of Initiated Ordinance to Electors.

"If the commission fails to pass an ordinance proposed by initiative petition or passes it in a form different from that set forth in the petition therefor, the committee of the petitioners hereinafter provided for may require that it be submitted to a vote of the electors either in its original form or with any change or amendment presented in writing either at a public hearing before the committee to which the proposed ordinance was referred or during the consideration thereof by the commission.  If the committee of petitioners require the submission of a proposed ordinance to a vote of the electors they shall certify that fact to the city clerk, and file in his office a certified copy of the proposed ordinance in the form in which it is to be submitted, within ten days after final action on such proposed ordinance by the commission.

"Section 17  Election on Initiated Ordinance.

"Upon receipt of the certified copy of a proposed ordinance from the committee of the petitioners, the city clerk shall certify that fact to the commission at the next regular meeting. If any election is to be held not more than one year nor less than thirty days after the receipt of the clerk's certificate by the commission, the proposed ordinance shall be submitted to a vote of the electors at the first such election unless the commission provides for submitting it to the electors at a special election to be held within the time aforesaid. If no other election is to be held within one year and not less than thirty days after the receipt of the clerk's certificate as aforesaid, the commission shall provide for submitting the proposed ordinance to the electors at a special election to be held within that time. If, when submitted to the electors, a majority of those voting on a proposed ordinance vote in favor thereof, it shall be an ordinance of the city. Initiated ordinances adopted by the electors shall be published, and may be amended or repealed by the commission, as in the case of other ordinances."

{¶ 10} After Piqua Clerk Cool certified the sufficiency of the petition, she failed to submit it to the commission, and the commission refused to follow the procedures specified in Section 15 of the Piqua Charter. Thereafter, by certification pursuant to Section 16, relators required the submission to a vote of electors of the proposed ordinance. Respondents Cool and the commission failed to act on relators' certification as required by Section 17 of the charter.

{¶ 11} Respondents refused to proceed in accordance with Sections 15, 16, and 17 of the charter based on their claims that the initiative petition was excepted from the charter initiative provisions as an appropriation ordinance, or that the proposed ordinance would require an illegal expenditure without an appropriation, and that the proposed ordinance addressed a nonlegislative matter. Respondents' claims lack merit.

{¶ 12} Respondents first contend that the proposed ordinance is excepted from the charter initiative provisions because it is an appropriation ordinance.

Section 14 of the Piqua Charter specifies that "[t]he electors shall have power to propose any ordinance *except an appropriation ordinance*, and to adopt or reject the same at the polls, such power being known as the initiative." (Emphasis added.) The charter, however, does not define "appropriation ordinance." Undefined language used in a municipal charter should be construed according to its ordinary and common usage. *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987, 990; *State ex rel. Minor v. Eschen* (1995), 74 Ohio St.3d 134, 138, 656 N.E.2d 940, 944.

{¶ 13} We have held that the ordinary and common meaning of the comparable phrase "appropriation bill" is a "measure before a legislative body which authorizes 'the expenditure of public moneys and stipulat[es] the amount, manner, and purpose of the various items of expenditure.' " *State ex rel. Akron Edn. Assn. v. Essex* (1976), 47 Ohio St.2d 47, 49, 1 O.O.3d 28, 30, 351 N.E.2d 118, 119-120, quoting Webster's New International Dictionary (2 Ed.); see, also, Black's Law Dictionary (6 Ed.1990) 102; *Risser v. Klauser* (1997), 207 Wis.2d 176, 192, 558 N.W.2d 108, 115. An appropriation bill must "contain, somewhere within its four corners, a specific appropriation in money." *State ex rel. Akron Edn. Assn.*, 47 Ohio St.2d at 50, 1 O.O.3d at 30, 351 N.E.2d at 120.

{¶ 14} The ordinance proposed by relators in their initiative petition is not an appropriation ordinance because it contains no specific appropriation of money and fails to stipulate any amount associated with the employment of independent legal counsel authorized therein. There is consequently nothing to support respondents' claims that the proposed ordinance is an appropriation ordinance excepted from the charter initiative provisions under Section 14 of the charter. See *State ex rel. King v. Portsmouth* (1986), 27 Ohio St.3d 1, 4, 27 OBR 73, 75, 497 N.E.2d 1126, 1128. Respondents' reliance on the R.C. 131.01(F) definition of "appropriation" is misplaced because that definition does not apply to municipal ordinances. R.C. 131.01(F) limits the applicability of the definition to statutes

enacted by the General Assembly.

{¶ 15} Respondents next contend that the proposed ordinance is not subject to initiative because it is substantively illegal under Section 53 of the Piqua Charter, which provides that "[n]o money shall be drawn from the treasury of the city, nor shall any obligation for the expenditure of money be incurred excepting pursuance of the annual appropriation ordinance, any preliminary appropriation ordinance passed in accordance with Section 50 of this Charter, or of the annual appropriation ordinance when changed as authorized by Section 51 hereof."

{¶ 16} We need not address this contention because it does not bar an election on the proposed initiative ordinance. Any claims alleging the unconstitutionality or illegality of the substance of the proposed ordinance, or actions to be taken pursuant to the ordinance when enacted, are premature before its approval by the electorate. In other words, " 'where the mandatory provisions of the Constitution or statute prescribing the necessary preliminary steps to authorize the submission to the electors of an initiative statute or ordinance have been complied with, the submission will not be enjoined.' " *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 293, 649 N.E.2d 1205, 1208, quoting *Cincinnati v. Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556, paragraph two of the syllabus. In this regard, respondents' citation of *State ex rel. McGraw v. Smith* (1935), 129 Ohio St. 246, 2 O.O. 116, 194 N.E. 872, to attack the validity of any contract entered into pursuant to the initiated ordinance, is also premature.

{¶ 17} Respondents finally contend that the proposed ordinance is not subject to initiative because it does not involve matters that Piqua "may now or hereafter be authorized by law to control by legislative action." Section 1f, Article II, Ohio Constitution. Section 1f, Article II of the Ohio Constitution limits initiative and referendum powers to questions that are legislative in nature. *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 543, 697

N.E.2d 181, 184. The matters addressed in the initiative petition are legislative in nature, and are therefore properly subject to initiative, because the proposed ordinance involves the creation of a new law rather than the execution or administration of laws that are already in existence. *Id.* at 543-544, 697 N.E.2d at 185; *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus. Contrary to respondents' contentions, the initiative petition involved here is not comparable to the initiative petition in *State ex rel. Beckstedt v. Eyrich* (1963), 120 Ohio App. 338, 345, 29 O.O.2d 170, 174, 195 N.E.2d 371, 376, in which the petition "propose[d] no enactment, provide[d] no detail or direction as to how the program should be undertaken, and provide[d] no form which could be construed as legislation whether effected by the people themselves or by the council."

{¶ 18} Therefore, respondents erroneously failed to act pursuant to the applicable charter provisions either to enact the proposed ordinance or submit it to the electors at the November 2 general election. Relators have a clear legal right to compel Cool to certify to the commission that relators filed a certified copy of the proposed ordinance and to compel the commission to submit the proposed ordinance to the electors at the November 2 general election, respondents have corresponding legal duties, and given the proximity of the general election, relators lack an adequate alternative legal remedy. Sections 16 and 17, Piqua Charter; see, also, *Thurn*, 72 Ohio St.3d at 291-292, 649 N.E.2d at 1207-1208, citing *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 129, 412 N.E.2d 393, 394. Because relators' entitlement to the requested relief is evident and the pertinent facts are uncontroverted, no further evidence or argument is necessary to resolve this case, and we grant a peremptory writ. *Dist. 1199*, 83 Ohio St.3d at 353, 699 N.E.2d at 1282. This conclusion is consistent with our duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 40,

671 N.E.2d 1, 5; *State ex rel. King*, 27 Ohio St.3d at 4, 27 OBR at 75, 497 N.E.2d at 1128.

{¶ 19} By so holding, we need not decide relators' remaining contention that Section 14 of the Piqua Charter, which excepts appropriation ordinances from its initiative provisions, is unconstitutional. Courts decide constitutional issues only when absolutely necessary. *State ex rel. BSW Development Group v. Dayton* (1998), 83 Ohio St.3d 338, 345, 699 N.E.2d 1271, 1277.

Attorney Fees

{¶ 20} Relators also request attorney fees. Despite respondents' claims that such fees are not authorized by statute, these fees might be recoverable under R.C. 733.61. The decision to award attorney fees to successful relators in an R.C. Chapter 733 taxpayer suit is within the court's discretion. R.C. 733.61; *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 407-408, 659 N.E.2d 781, 786. An award requires a public benefit resulting from the litigation. *State ex rel. Commt. for Charter Amendment Petition v. Avon* (1998), 81 Ohio St.3d 590, 595, 693 N.E.2d 205, 209. It is unclear from the pleadings submitted whether relators should be awarded attorney fees. Therefore, we will withhold a decision on this issue until the receipt of briefs and evidence concerning entitlement to the award and the reasonableness of the requested amount. *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 58, 641 N.E.2d 1075, 1080.

{¶ 21} Accordingly, for the foregoing reasons, we deny respondents' motion for judgment on the pleadings and grant a peremptory writ of mandamus to compel the Piqua Clerk to certify to the Piqua Commission that relators filed a certified copy of the proposed ordinance for submission to the electors and to compel the Piqua Commission to submit the proposed ordinance to the electors at the November 2 general election. In addition, we order the parties to submit evidence and briefs regarding relators' entitlement to and reasonable amount of an award of attorney fees.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————