The State ex rel. North Main Street Coalition
et al. *v.* Webb, Village Clerk.

[Cite as *State ex rel. N. Main St. Coalition v. Webb,*
106 Ohio St.3d 437, 2005-Ohio-5009.]

(No. 2005–1616—Submitted September 15, 2005—Decided September 26, 2005.)

**Per Curiam.**

{¶ 1} This is an expedited election case in which initiative petitioners seek a writ of mandamus to compel a village clerk to certify the sufficiency and validity of the petition to the board of elections for placement of a proposed ordinance on the November 8, 2005 election ballot.

{¶ 2} In 2000, the Ohio Department of Transportation ("ODOT") announced a $200 million, ten-year rail-crossing-safety initiative to "provide railroad grade separations to communities most affected by increased train traffic as a result of the recent acquisition of Conrail by the Norfolk Southern Corporation and CSX Transportation." The Council of the village of Wellington, Ohio, enacted Resolution 2000–02, which requested that the Ohio Rail Development Commission fund a feasibility study to determine the possibility and plausibility of a grade separation within the village.

{¶ 3} In 2001, ODOT retained an engineering company to design a railroad underpass to be constructed along State Route 58 in Wellington.

{¶ 4} On December 17, 2001, the Wellington Village Council passed Resolution No. 2001–62, an emergency measure for the village to "contribute up to 5% of the project cost for a grade separation to be constructed on SR–58." The resolution specified that the village is located on a CSX Transportation railroad line, that the line bisects the village on a diagonal that contains at-grade crossings on state highways S.R. 18 and S.R. 58, that a grade separation would enhance the safety of the crossings and the health, safety, and welfare of the community, and that ODOT had conducted a study to determine the feasibility of a grade separation at S.R. 58. At present, ODOT is considering only the S.R. 58 site for the

construction of a new railroad grade separation in Wellington. ODOT has not, however, made a final decision.

{¶ 5} Relator North Main Street Coalition ("North Main") is a committee designated to circulate initiative petitions. North Main is composed of relators Helen Dronsfield, James Farago, Helen Wiggs, and Mary Lou Rapp, who are Wellington taxpayers and residents.

{¶ 6} North Main circulated an initiative petition proposing an ordinance to repeal Resolution No. 2001–62, which it refers to as the "Rt. 58 Underpass Project." According to North Main, the Rt. 58 Underpass Project "would cause destruction and damage to the historical nature of downtown Wellington and would result in the loss of and damage to residential properties." Election officials certified the proposed ordinance for placement on the November 8, 2005 election ballot.

{¶ 7} In conjunction with its initiative petition to repeal Resolution No. 2001–62, North Main also circulated a separate initiative petition. The petition proposes an ordinance to approve a different location for the grade-separation project. It proposes an overpass bridge in the Maple Street Industrial Park area and a village contribution of up to five percent of the project cost:

{¶ 8} "Section 1: That based upon the facts that the grade separation project, known as the overpass bridge at the Maple St. Industrial Park area, would not cause destruction and damage to the historical nature of downtown Wellington, would not result in the loss of and damage to residential properties, would have cost savings, and would provide an alternative eastern traffic bypass for downtown traffic, the location for the grade separation project to be constructed, known as the overpass bridge at the Maple St. Industrial Park area, and the contribution of up to 5% of the project cost for the grade separation project is hereby approved."

{¶ 9} Although the petition did not specify North Main as the committee filing or circulating the petition, it listed the North Main members, relators Farago, Dronsfield, Wiggs, and Rapp, as the committee. On July 8, 2005, before circulating the petition, North Main filed a certified copy of the proposed ordinance with respondent, Village Clerk Karen Webb. In correspondence accompanying the proposed ordinance, North Main referred to itself as the "Committee for the Overpass Bridge Maple St. Industrial Park Project."

{¶ 10} On July 28, 2005, North Main filed in Webb's office the initiative petition for the proposed ordinance on the Maple Street Overpass Bridge Project. The petition contained 179 signatures. North Main again referred to itself as the Committee for the Overpass Bridge Maple St. Industrial Park Project. North Main further advised Webb of her duties under R.C. 731.28, including that she certify the sufficiency and validity of the petition to the Lorain County Board of

Elections by August 25, 2005 to assure placement of the initiative on the November 8, 2005 election ballot.

{¶ 11} On August 8, 2005, Webb submitted the petition to the board to determine the number of valid signatures. On August 9, the board determined that the petition contained 170 valid signatures, which was sufficient to place the initiative on the November 8 election ballot. The board advised Webb:

{¶ 12} "It has been found that there are enough valid signatures for you to certify the sufficiency and validity of said petitions and return them to us before the August 25th filing deadline in order for this issue to be placed on the ballot for the November 8th, 2005 general election."

{¶ 13} On August 16, 2005, Webb asked Kenneth Wright, the ODOT Planning Administrator for District 3, to verify that ODOT did not have a pending or approved grade-separation project involving an overpass bridge in the Maple Street Industrial Park area. Wright responded that ODOT had no Maple Street project and that the Maple Street location had been "eliminated early in the process." Nevertheless, Wright and another ODOT official have also stated that ODOT would consider and investigate alternatives to a S.R. 58 underpass, including a Maple Street overpass bridge. In Wright's words, "If there is support for another location, ODOT will look at it."

{¶ 14} After her correspondence with Wright, Webb questioned whether the ordinance proposed by relators was legally sufficient or valid. On August 19, 2005, Village Solicitor Stephen Bond filed suit on behalf of Webb in the Lorain County Court of Common Pleas. In the complaint, Webb requested a declaratory judgment that (1) the ordinance proposed by relators' initiative petition to approve a grade-separation project in the Maple Street Industrial Park area is not legally sufficient and is not valid and (2) Webb has the discretion to determine that the proposed ordinance is not sufficient and is invalid, and therefore she is not required to certify the petition to the board of elections. Webb did not specify in the complaint that she promised to abide by the common pleas court's ruling.

{¶ 15} Webb's declaratory-judgment complaint named relator Farago, the board of elections, and ODOT as defendants, but did not name North Main [1] or any of its members besides Farago as parties. Farago did not receive service of summons and a copy of the complaint. On the same date that the complaint was filed, however, Bond notified North Main's counsel of the filing and mailed a courtesy copy of the complaint.

---

1. Webb did not name as a defendant either North Main or the name of the committee specified by North Main in its correspondence to Webb, i.e., Committee for the Overpass Bridge Maple St. Industrial Park Project.

{¶ 16} On August 23, 2005, Webb advised North Main that she would not certify the initiative petition to the board of elections. On that date, North Main and its members demanded that Bond immediately bring an action to compel Webb to certify the petition to the board of elections by August 25. Bond rejected the demand, explaining that he had already commenced the declaratory-judgment action on behalf of Webb, Webb had discretion to determine the sufficiency and validity of the petition, and the common pleas court could determine that the petition was insufficient or invalid.

{¶ 17} On August 30, relators, North Main and its members, filed this expedited election action for a writ of mandamus to compel Webb to certify the sufficiency and validity of the initiative petition and to place the proposed ordinance regarding the Maple Street Overpass Bridge Project on the November 8, 2005 election ballot. Webb responded by filing an answer and a motion to dismiss, and the parties submitted evidence and briefs pursuant to the accelerated schedule in S.Ct.Prac.R. X(9).

{¶ 18} This cause is now before the court for a consideration of the merits.

## Motion to Dismiss

{¶ 19} We deny Webb's motion to dismiss. Because Webb's motion was filed at the same time as her answer, her belated Civ.R. 12(B)(6) motion is actually a motion for judgment on the pleadings. See, e.g., *State ex rel. Holloman v. Phillips,* 100 Ohio St.3d 70, 2003-Ohio-5063, 796 N.E.2d 524, fn. 3; *Carcorp, Inc. v. Chesrown Oldsmobile–GMC Truck, Inc.,* 159 Ohio App.3d 87, 2004-Ohio-5946, 823 N.E.2d 34, ¶ 10.

{¶ 20} Motions to dismiss and for judgment on the pleadings are inappropriate in expedited election cases because "[u]nder S.Ct.Prac.R. X(9), the presentation of evidence and briefs on the merits * * * is provided in lieu of a S.Ct.Prac.R. X(5) dismissal determination, making procedural motions normally inapplicable." See *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 111, 712 N.E.2d 696; *State ex rel. Hackworth v. Hughes,* 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 20.

{¶ 21} Therefore, we deny Webb's motion to dismiss. Nevertheless, we will consider her arguments in our consideration of the merits.

## Mandamus

{¶ 22} North Main and its members request a writ of mandamus to compel Webb to certify the sufficiency and validity of the initiative petition to the board of elections for placement on the November 8 election ballot.

{¶ 23} In order to be entitled to the writ of mandamus, relators must establish a clear legal right to certification of the initiative petition, a corresponding clear

legal duty on the part of Webb to certify the petition, and the lack of an adequate remedy in the ordinary course of law to provide the certification. *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 16.

### Sufficiency and Validity of Initiative Petition

{¶ 24} Relators claim that Webb abused her discretion in refusing to certify the sufficiency and validity of the initiative petition.

{¶ 25} "R.C. 731.28 provides the following procedure for municipal initiative petitions: (1) when a petition for an initiated ordinance or other measure is signed by the required number of electors, the city auditor or village clerk has a mandatory, ministerial duty, after ten days from the date the petition was filed, to transmit the petition and a certified copy of the text of the proposed ordinance or other measure to the board of elections; (2) within ten days of receiving the petition, the board of elections is required to determine the number of electors of the municipal corporation who signed the petition and return the petition to the auditor or clerk together with a statement attesting to the number; (3) the auditor or clerk then exercises limited, discretionary authority to determine the sufficiency and validity of the petition; and (4) if the auditor or clerk certifies the sufficiency and validity of the initiative petition to the board of elections, the board must submit the proposed ordinance or other measure at the next succeeding general election occurring after seventy-five days from the certification to the board of elections, but only if the board determines under R.C. 3501.11(K) and 3501.39 that the petition is sufficient and valid." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971.

{¶ 26} North Main presented the petition to Webb on July 28. Webb followed R.C. 731.28 by transmitting the petition and a certified text of the proposed ordinance regarding the Maple Street Overpass Bridge Project to the board of elections on August 8. The board determined that the petition contained sufficient valid signatures and returned it to Webb on August 9 for her sufficiency and validity determination. As both North Main and the board of elections advised her, Webb had until August 25 to certify the petition to the board for placement of the proposed ordinance on the November 8 ballot.

{¶ 27} But Webb did not certify the petition to the board by August 25. Webb, in her capacity as the village clerk, exercises a limited, discretionary authority to determine the sufficiency and validity of the petition. *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 231, 685 N.E.2d 754, citing 1 Gotherman & Babbit, Ohio Municipal Law (1992) 119, Section T 7.37(B). Although a writ of mandamus will not control Webb's exercise of her discretion, it will correct an abuse of that discretion. Id. at 232, 685 N.E.2d 754 ("a writ of mandamus *will* issue to correct an abuse of such discretion by a nonjudicial public body or official" [emphasis sic] ).

{¶ 28} Relators contend that Webb abused her limited discretion by refusing to certify the sufficiency and validity of relators' initiative petition to the board of elections. Webb claims that she had no duty to certify the petition, because the proposed ordinance concerns an administrative, instead of a legislative, subject, and its enactment would amount to a vain act because the ordinance proposes to take an action that the village cannot legally perform, i.e., approve the location of a grade separation that is not under consideration by ODOT.

{¶ 29} For the following reasons, we hold that Webb abused her discretion by refusing to certify the sufficiency and validity of relators' initiative petition to the board of elections.

{¶ 30} Webb exceeded her limited, discretionary authority by attempting to resolve substantive questions not evident on the face of the petition. The village clerk "does not inquire into questions not evident on the face of the petition or conduct a judicial or quasi-judicial proceeding." *Sinay*, 80 Ohio St.3d at 231, 685 N.E.2d 754. In *Sinay*, we observed that the discretion of city auditors and village clerks in determining the sufficiency and validity of initiative petitions is similar to the limited discretion of municipal legislative authorities in deciding the sufficiency of petitions to amend a city charter. Id., citing *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 55, 641 N.E.2d 1075. A municipal legislative authority's discretion in these cases is "limited to matters of form, not substance," is "more restricted than that of a board of elections," does not involve "judicial or quasi-judicial determinations, *e.g.*, analyzing if the requirements of R.C. 3501.38(F) have been satisfied," and does not permit "inquir[ing] into questions not apparent on the face of the petitions themselves or which require the aid of witnesses to determine." *Morris*, 71 Ohio St.3d at 55, 641 N.E.2d 1075.

{¶ 31} Webb improperly engaged in a judicial or quasi-judicial determination to decide the manifestly substantive issues of whether the ordinance proposed by relators' initiative petition involved a subject that the village was authorized to control by legislative action and whether enactment of the proposed ordinance would constitute a vain act. See, e.g., *State ex rel. Barberis v. Bay Village* (1971), 31 Ohio Misc. 203, 204, 59 O.O.2d 366, 281 N.E.2d 209 ("Whether any given action of a municipal council is legislative or administrative is a judicial question"); *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 53, 572 N.E.2d 649 ("council's authority is limited to approving the form of the petition, not its content").

{¶ 32} In fact, Webb refused to certify the sufficiency and validity of the initiative petition only after she sought information from an ODOT official about the status of the Main Street project mentioned in the proposed ordinance. This Webb could not do. See *Morris*, 71 Ohio St.3d at 55, 641 N.E.2d 1075 ("council

cannot inquire into questions * * * which require the aid of witnesses to determine").

{¶ 33} Moreover, even assuming that Webb had the broader authority she claims to have in determining the sufficiency and validity of the initiative petition, she erred in determining that the petition was insufficient and invalid.

{¶ 34} "Mandamus will not lie to compel a board of elections to submit an ordinance proposed by initiative petition to the electorate if the ordinance does not involve a subject which a municipality is authorized by law to control by legislative action." *State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 165, 168, 685 N.E.2d 224; *State ex rel. Rhodes v. Lake Cty. Bd. of Elections* (1967), 12 Ohio St.2d 4, 41 O.O.2d 2, 230 N.E.2d 347; Section 1f, Article II, the Ohio Constitution. Administrative actions are not subject to initiative. *Hazel,* 80 Ohio St.3d at 169, 685 N.E.2d 224. "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

{¶ 35} The proposed ordinance here is legislative and thus subject to initiative because it would enact a law rather than simply execute or administer preexisting laws. It specifies the location for the grade-separation project as well as the village's financial contribution for that project. This is not like the ordinance proposed in *Rhodes,* a case that Webb relies on to claim that the proposed ordinance is not subject to initiative. *Rhodes* involved a proposed village resolution that the "President of the United States should bring all American troops home from Vietnam." Id. See, also, *State ex rel. Bevington v. Summit Cty. Bd. of Elections* (May 2, 1979), Summit App. No. 9087, 1979 WL 207624 (no right to place on ballot municipal initiative proposing an ordinance requesting a congressional investigation of an Ohio company). Unlike the proposed ordinances in *Rhodes* and *Bevington,* the proposed ordinance here is not merely precatory and without legal effect. The initiative does not expressly request a third party to do something—it sets a location for the project and the village's contribution for the project. If ODOT decides to construct a Maple Street overpass bridge, the proposed ordinance will bind the village to contribute five percent to its cost. By contrast, the proposed ordinances in *Rhodes* and *Bevington* would not have bound the municipalities involved therein in any way.

{¶ 36} In effect, relators' proposed ordinance on the Maple Street Overpass Bridge Project is no more precatory or indefinite than Resolution No. 2001–62, which the Wellington Village Council passed in 2001 to have the village contribute up to five percent of the cost for a grade separation to be constructed on S.R. 58.

ODOT had not committed to construct the grade separation on S.R. 58 at the time that Resolution No. 2001–62 was enacted, and in fact, has not done so at this time.

{¶ 37} Moreover, Webb's contention that passing the proposed ordinance would constitute a vain act based on *State ex rel. Beckstedt v. Eyrich* (1963), 120 Ohio App. 338, 29 O.O.2d 170, 195 N.E.2d 371, also lacks merit. See *State ex rel. Moore v. Malone,* 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38 ("Mandamus will not issue to compel a vain act"). *Beckstedt* involved a proposed ordinance on whether a city council should "undertake an Urban Renewal program which includes federal financial assistance." Id. at 340, 29 O.O.2d 170, 195 N.E.2d 371. The initiative petition was deemed ineffective because it "propose[d] no enactment, provide[d] no detail or direction as to how the program should be undertaken, and provide[d] no form which could be construed as legislation whether effected by the people themselves or by the council." Id. at 345, 29 O.O.2d 170, 195 N.E.2d 371. The proposed ordinance here is considerably more detailed than the one at issue in *Beckstedt* and is at least as detailed as the one passed by the village in 2001. And relators introduced evidence that ODOT would consider their proposed Maple Street location for the grade-separation project; thus, passing the ordinance would not necessarily be a vain act.

{¶ 38} In effect, Webb's claim that the proposed ordinance might, if enacted, violate R.C. 5501.31 by unilaterally changing the location of ODOT's grade-separation project without ODOT's approval is an attack on the legality or effectiveness of the ordinance instead of a challenge to the propriety of its submission to the voters. These claims are premature before the ordinance is passed by the electorate. See *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 6, 716 N.E.2d 1114 ("Any claims alleging the unconstitutionality or illegality of the substance of the proposed ordinance, or actions to be taken pursuant to the ordinance when enacted are premature before its approval by the electorate").

{¶ 39} Therefore, Webb abused her limited discretion in failing to certify the sufficiency and validity of the initiative petition to the board of elections by August 25.

### Lack of Adequate Remedy in the Ordinary Course of Law

{¶ 40} Webb asserts that even if she had a clear legal duty under R.C. 731.28 to certify the sufficiency and validity of the initiative petition to the board of elections, relators have an adequate remedy at law by way of Webb's pending declaratory-judgment action to raise their claims.

{¶ 41} A writ of mandamus will not be issued when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05. In order for an alternative remedy to constitute an adequate remedy at law, it must be

complete, beneficial, and speedy. *State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas,* 106 Ohio St.3d 151, 2005-Ohio-4103, 832 N.E.2d 1206, ¶ 19.

{¶ 42} A declaratory judgment is not an adequate remedy here, because it is not sufficiently complete. A declaratory judgment would not be a complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction to compel Webb to comply with R.C. 731.28 by certifying the sufficiency and validity of the initiative petition. *State ex rel. Webb v. Bliss,* 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 23.

{¶ 43} Nor is the pending declaratory-judgment action sufficiently speedy. Given the proximity of the November 8 election, any appellate process would last well past the election. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 292, 649 N.E.2d 1205. In expedited election cases, "[t]he 'ordinary course of law' doctrine does not comprehend that a relator in a mandamus action be obliged to follow the suicidal course of filing a cross-complaint in his opponent's different action in another court which would foreclose his own suit in mandamus." *State ex rel. Tulley v. Brown* (1972), 29 Ohio St.2d 235, 237, 58 O.O.2d 489, 281 N.E.2d 187. Time was of the essence here once Webb received the petition back from the board of elections on August 9. She had until August 25 to certify the petition to the board for placement on the November 8 election ballot.

{¶ 44} Webb erroneously relies on *State ex rel. Citizens for Fair Taxation v. Lucas Cty. Bd. of Commrs.* (1992), 63 Ohio St.3d 749, 591 N.E.2d 691, to claim that her pending declaratory-judgment action was an adequate remedy. In that case, the court held that a pending declaratory-judgment action constituted an adequate remedy barring an action for an extraordinary writ because the action had been filed against the relators bringing the mandamus action, and the complaint for declaratory relief "reflect[ed] the principal respondent's promise to abide by the common pleas court's declaration." Id. at 752, 591 N.E.2d 691.

{¶ 45} Neither of these things is true of the pending declaratory-judgment case here. Webb did not name all of the relators as parties to the declaratory-judgment action, and the one relator she did name—Farago—was not served with the complaint. See R.C. 2721.12(A) ("when declaratory relief is sought * * * all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding"). In her common pleas court complaint, Webb does not promise to comply with any court order, and she seeks a declaration that because the petition is defective, she has no duty to certify its sufficiency and validity to the board of elections. Even in her evidence submitted in this expedited election case, Webb has not promised to abide by any declaration of the common pleas court. Instead, she states only that it is her "intention" to abide.

{¶ 46} More important, in *Citizens*, the requested relief was to certify a referendum petition at either the upcoming primary *or* the next general election. Id. at 750, 591 N.E.2d 691. Thus, a prompt resolution was not as necessary in that case as it is here, where the relators seek placement of the initiative on the November 8 ballot.

{¶ 47} Based on the foregoing, relators have established their entitlement to a writ of mandamus to compel Webb to certify the sufficiency and validity of the initiative petition to the board of elections for placement on the November 8 election ballot. Webb received a copy of the petition as early as July 8, but did not make her erroneous objection to the substantive nature of the proposed ordinance until late August. Because Webb's unjustified delay in certifying the petition to the board of elections caused the August 25 deadline to pass, relators are entitled to the writ to compel certification of the petition for placement of the proposed ordinance on the November 8 election ballot. Cf. *Morris*, 71 Ohio St.3d 52, 641 N.E.2d 1075 (city council's unjustified failure to promptly determine sufficiency of petition for city-charter amendment warranted writ of mandamus compelling inclusion of charter-amendment initiative on next election ballot even though constitutional deadline had passed). Our holding is consistent with our duty to liberally construe municipal initiative provisions to permit the exercise of the power of initiative. *DeBrosse*, 87 Ohio St.3d at 7, 716 N.E.2d 1114.

### Attorney Fees

{¶ 48} Relators seek attorney fees pursuant to R.C. 733.61. "The decision to award attorney fees to successful relators in an R.C. Chapter 733 taxpayer suit is within the court's discretion." *DeBrosse* at 7, 716 N.E.2d 1114. "In exercising this discretion, courts consider whether the case resulted in a public benefit and if respondents had a reasonable basis to support their position." *State ex rel. Miles v. McSweeney*, 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶ 29.

{¶ 49} We deny relators' request for attorney fees. Although Webb's position was ultimately erroneous, she had a reasonable basis for believing that she was acting properly by seeking the common pleas court's guidance on whether to certify the initiative petition.

{¶ 50} Based on the foregoing, we grant a writ of mandamus to compel respondent to certify the sufficiency and validity of relators' initiative petition to the Lorain County Board of Elections for placement on the November 8, 2005 election ballot.

Writ granted.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., dissents.

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Baumgartner & O'Toole and Stephen P. Bond, Wellington Village Solicitor, for respondent.